Grant
*v.*
Dalliber.

## GRANT *against* DALLIBER.

*A*, residing with his family at his dwelling-house in the town of *T*, was sentenced to the state prison, for four years, and in pursuance of such sentence resided there, as a prisoner, from *August* 1828, to *August* 1832; his family remaining, all the time, in such dwelling-house. In *March*, 1832, *B* attached the real estate of *A* in *T*, leaving copies at his dwelling-house, as his usual place of abode. In *June*, 1832, *B* having obtained a judgment against *A*, had his execution levied on the estate so attached, the officer making demand upon the execution at the dwelling-house of *A*, immediately after which, he proceeded to levy the execution, and to procure the appointment of appraisers, one by *B*, the creditor, and two by a justice of the peace. In an action of *ejectment* afterwards brought by *A* against *B* for the estate in question, it was held, 1. that the usual place of abode of *A*, during his imprisonment, was at his dwelling-house in *T*, such usual place of abode not being changed or abandoned, by a constrained removal; and consequently, that the writ of attachment was legally served; 2. that the levy of the execution was not ineffectual to transfer a title, either because it was made immediately after making demand of payment, without giving time to *B* to satisfy the execution; or because two appraisers were appointed by the justice, without giving *B* an opportunity to appoint one; the conduct of the officer being reasonable, under the circumstances of the case.

THIS was an action of ejectment, brought in *December*, 1833.

The cause was tried at *Litchfield, August* term, 1835, before *Waite*, J.

The plaintiff claimed title to the demanded premises, by virtue of the levy of an execution thereon in his favour against the defendant. The judgment on which this execution issued, was rendered, by default, in *April*, 1832; and the suit in which such judgment was rendered, was commenced by writ of attachment, served *March* 22, 1832. The return of the officer on the writ, after describing the property attached, was as follows: "And on said day, I left a true and attested copy of this writ and of the endorsement of my doings describing the property attached thereon, at the usual place of abode of the defendant in said town [*Torrington;*] and on the same day, I left a like copy, certified as aforesaid, at the office of the town-clerk of said town of *Torrington*, within which the lands attached are situated." The officer's return on the execution, was as follows: " *Litchfield* county *ss. Torrington, June* 9th, 1832. I then, by virtue hereof, made demand at the usual place of abode of *Samuel Dalliber*, the debtor herein, of the sums due on this execution and my fees thereon, which were

neglected to be paid, and not being able to find any goods or personal estate of said debtor within my precincts, and none being shewn to me whereon to levy, by direction of the creditor herein, I levied this execution on [the demanded premises;] and thereupon I applied to *Matthew Grant,* the creditor herein, who appointed *Elihu Cook,* the debtor being out of my precincts, and neglecting to appoint, I applied to *Erastus Hodges,* justice of the peace for said county of *Litchfield,* residing in said town of *Torrington,* and by law qualified to judge between the parties in civil causes, who appointed *Lyman Wetmore* and *Giles Whiting,* all indifferent freeholders of said town of *Torrington,* appraisers, to appraise said lands," &c. [in usual and regular form.]

In *August,* 1828,the defendant was sentenced to the *Connecticut* state prison, for the term of four years ; and he remained confined therein from *August,* 1828, to *August,* 1832. Before his commitment, he resided at his dwelling-house in *Torrington.* He left his wife and family in such dwelling-house, where they continued to reside, with a short interruption, until *August,* 1832 ; and to this place he returned, as to his dwelling, immediately after the expiration of his imprisonment. Here the copy mentioned in the officer's return, was left in service, with the defendant's family, on the 22nd of *March,* 1832 ; and the writ was not otherwise served. The officer who had the execution, made demand upon it at this dwelling-house, on the 7th of *June,* 1832, where the defendant's family then resided ; and immediately proceeded, on the same day, to levy the execution, and to procure the appointment of appraisers, one by the creditor, and two by a justice of the peace.

Upon these facts, the defendant claimed, 1. That the judgment was void, because the writ was never served ; and because the dwelling-house was not the usual place of abode of the defendant. 2. That a reasonable time ought to have been allowed, after demand made, for the defendant to pay the execution and appoint an appraiser ; that such reasonable time was not allowed ; and that for this cause, the levy was invalid. And the defendant requested the judge to charge the jury in conformity to these claims. The judge charged the jury, that the judgment was not void, nor the levy invalid, by reason of the facts relied on for those purposes ; and directed the jury to return a verdict for the plaintiff ; which they accordingly did.

The defendant thereupon moved for a new trial, for a misdirection.

*O. S. Seymour* and *Andrews*, in support of the motion, contended, 1. That a judgment rendered without either actual notice, or the service prescribed by statute, which the law deems equivalent, is void. *Butts &* al. v. *Francis*, 4 *Conn. Rep.* 424. *Buchanan* v. *Rucker*, 9 *East* 192. *Kilburn* v. *Woodworth*, 5 *Johns. Rep.* 37. *Bartlet* v. *Knight*, 1 *Mass. Rep.* 407. *Smith* v. *Rhoades*, 1 *Day* 168. *Robinson* v. *Ward's* exrs. 8 *Johns. Rep.* 90. *Borden* v. *Fitch*, 15 *Johns. Rep.* 141, 2.

2. That in this case, no copy was left with the defendant, or at his usual place of abode. The first branch of this proposition is a matter of *fact*, which appears on the face of the motion : the other branch depends on the construction of the phrase "usual place of abode." The service of civil process being a creature of the statute, and the statute, so far as it dispenses with actual notice, in derogation of the common law, it is to receive a *strict* construction. Now, a man cannot be said to *abide usually* in a place where he does not reside at all. This is not a case of domicil where the law allows a *constructive* residence. A constrained change of residence may not change a man's domicil ; but it does change his place of abode. From *August*, 1828, to *August*, 1832, the defendant's usual and constant place of abode was in the state prison at *Wethersfield*, and no where else. *Touro* v. *Coates &* al. 10 *Mass. Rep.* 25.

3. That if the defendant's usual place of abode was in *Torrington*, where his family was, still the levy of the execution is bad ; first, because a reasonable time after demand was not allowed to make payment ; and secondly, because he had no opportunity given him to appoint an appraiser, but without any refusal or neglect on his part, the justice appointed two appraisers. *Gilbert* v. *Rider*, *Kirby* 180. *Scott* v. *Crane*, 1 *Conn. Rep.* 255. 259. *Eddy* v. *Knapp*, 2 *Mass. Rep.* 154. *Whitman* v. *Tyler &* al. 8 *Mass. Rep.* 284. *Pendleton* v. *Button*, 3 *Conn. Rep.* 406. 412.

*P. Miner*, contra, contended, 1. That the defendant's usual place of abode within the statute regulating the service of

writs, was the residence of his family, as contradistinguished from any temporary or constrained residence of his; and consequently, that the service was legal and every way unexceptionable. A constrained residence for no length of time, will constitute a domicil. 1 *Kent's Com.* 76, 7. 2 *Bla. Com.* 430, 431. 2 *Bos. & Pul.* 229. n. 1 *Johns. Ca.* 366. n. The defendant did not go to the state's prison *animo manendi.*

2. That if the copy was left at the wrong place, the defective service should have been pleaded in abatement; or if there was no notice, it would be a good ground for a new trial; but in neither case, would the judgment be void. It cannot now be attacked collaterally.

3. That the officer conducted *reasonably* with the execution: he did his duty. This is sufficient.

CHURCH, J. The plaintiff claims title to the premises demanded, by virtue of a judgment and levy of execution upon them, in his favour against the defendant.

Upon the face of the entire record, every thing appears regular, and thus a *prima facie* title is shewn in the plaintiff. And this title will prevail, unless the defendant has successfully impeached it. The facts upon which the objections to the plaintiff's *prima facie* title are predicated, appear with precision upon the motion.

1. The defendant insists, that the original writ of attachment, upon which the plaintiff's judgment and execution were founded, was never legally served, so that in truth the judgment under which he now claims, is not merely erroneous, but void.

Writs of attachment against inhabitants or residents of the state, must be served, if real or personal property is attached, by leaving with the person whose estate is so attached, or at his usual place of abode, if within this state, a true and attested copy of the writ, together with the officer's return, describing the estate attached. And when a summons is served, it shall be, by the officer's reading the same in the hearing of the defendant, or leaving an attested copy thereof at the place of the defendant's abode. *Stat. tit.* 2. *chap.* 1 *sec.* 5.

The most prominent purpose of the law in prescribing the modes of serving civil process, was, to ensure actual notice to

defendants; and when the prescribed modes have been complied with, the law will presume that actual notice has been given and received.

In the present case, it is conceded, that *Dalliber*, the defendant in the original action, was an inhabitant and resident in this state, when the process was served, and had been, for a long time before; and of course, that he had a place of abode in the state. Where was his usual place of abode, as distinguished from the place of his occasional or temporary sojourning, is the question? Was it in *Torrington*, at the dwelling-house where he with his family formerly resided, and where his family, with his knowledge and consent, had ever since continued to reside? Or was it in the town of *Wethersfield*, in the state's prison, where he was constrained temporarily to remain? Before his imprisonment, his usual place of abode was in *Torrington*, in the same dwelling-house where the copy of the writ was left in service, where his family dwelt, and to which, as to his home, he returned, upon his enlargement from prison. He had never abandoned this, as his place of residence; he had left it, by constraint; he had acquired no new or other place of residence. The state's prison was not the place of his abode; it was the place of his punishment; and while there, he was absent from home.

We think it may be said generally, that the place in which a married man's family resides, with his consent, and where he has voluntarily resided with them, as his home, and which he has never abandoned, may well be considered as the place of his abode, unless such residence has been, and was intended to be, temporary and for transient purposes. And such place of residence or usual abode, is not changed or abandoned, by a constrained removal, as by imprisonment. Such is the law in regard to national domicil; and we think its principles applicable to domestic residence. 2 *Domat Pub. Law, tit.* 16. *Bempde,* v. *Johnstone,* 3 *Ves.* 198. *Story's Conflict of Laws,* 46. 1 *Kent's Com.* 77.

The ground assumed, by the defendant, upon this question, must result in the conclusion, that civil process against prisoners confined in the state's prison, must always be served upon them personally, within the walls of the prison. If this be so, every officer or indifferent person serving process, must, at all

times, have right and authority to enter the prison, and have intercourse with convicts. Such a power would be found inconsistent with the safe-keeping of prisoners, as well as subversive of the necessary and salutary discipline of the prison ; and such a power cannot be exercised.

If the foregoing views of this question be the correct ones, it follows, that the usual place of *Dalliber's* abode was in *Torrington*, at the same place where the copy of the original writ of attachment was left in service, and of course, the writ was legally served ; and there remains no necessity for deciding the question, whether under a different view of the subject, a judgment founded upon that writ, would have been void.

2. But still it is insisted, that if the judgment and execution cannot be impeached, but are valid; yet that no title was acquired, by the levy of the execution, for two reasons.

First, that the officer making the levy, did not allow a reasonable time after demand made, and before the levy, for the defendant to pay and satisfy the execution ; having made his levy, immediately after making demand of payment.

Secondly, because no reasonable time was allowed *Dalliber* to appoint an appraiser ; and therefore, the defendant did not neglect to appoint, as alleged by the officer, in his return.

The officer serving the execution, was bound to conduct reasonably, in view of all the circumstances of the case ; and whether a reasonable time was given for either of the purposes claimed, must be determined, by these circumstances.

*Dalliber*, the defendant, was confined in the state's prison, as a convict. It could not be presumed, that he was in possession of funds wherewith to satisfy the execution. He was beyond the official precincts of the officer, and no person was under legal obligation to repair to him, either for the purpose of making a demand of money or goods, or of procuring the appointment of an appraiser. This denial of privilege, if indeed it was such, was not the result of the officer's neglect, but of the defendant's crime : his complaint should be of himself, and not of another. Under such circumstances, the officer was no more bound to give time, than if *Dalliber* had absconded from the state, or upon demand, had expressly refused to interfere in the matter. *Pendleton* v. *Button*, 3 *Conn. Rep.* 406.

The judge at the trial was entirely correct in refusing to

sanction these several claims of the defendant; and no new trial should be granted.

The other Judges concurred in this opinion.

New trial not to be granted.