METROPOLITAN LIFE INSURANCE COMPANY *v.* JONES, JUDGE.

4-4375

Opinion delivered October 12, 1936.

*Moore, Gray, Burrow & Chowning,* for petitioner.
*S. E. Gilliam,* for respondent.

MEHAFFY, J.   Paul Elam filed suit in the Union circuit court on August 9, 1935, alleging that he was the holder of two policies of life insurance issued by the Metropolitan Life Insurance Company, and that each policy contained a provision for the payment to him of $25 per month in the event he should become totally and permanently disabled.   He alleged that he had become totally and permanently disabled after the policies were issued and before filing of the suit, and that the insurance company had made disability payments to him under these policies for a period of time, and then discontinued the payments.   He prayed for judgment for the back payments due him up to the date of the filing of the suit.

At the time the suit was filed and for some months prior thereto, Paul Elam had been a prisoner in the federal penitentiary; first at Leavenworth, Kansas, and was afterwards transferred to the United States narcotics farm at Lexington, Kentucky, where he is now continuing his sentence.

The petitioner filed motion to quash service, and appeared specially and solely for that purpose.   It was alleged that Elam was, at the time of filing the suit, and still is, a resident of Mississippi county, and that his alleged disability did not occur in Union county, Arkansas, and that the circuit court of Union county had no jurisdiction to try the issue involved in the suit.

There was a hearing upon this motion, and after hearing the testimony and argument of counsel, the court overruled the petitioner's motion to quash service of summons, to which action of the court the petitioner saved its exceptions.   After the motion to quash was overruled, the petitioner filed its petition in this court, praying that the circuit court of Union county be prohibited from proceeding further in said cause.

A response was filed denying the allegations of the petition.   The evidence shows that Paul Elam lived in Mississippi county, and while living there he was convicted and sentenced to the federal penitentiary.

Paul Elam testified by deposition that he is now detained in the United States narcotic farm at Lex-

ington, Kentucky, under a sentence which has not yet expired; that his wife, Louise Elam, lives in El Dorado, Arkansas, having moved there about November, 1934; they have one child. Witness and wife had planned to move to El Dorado from Blytheville, prior to the beginning of his sentence; they had deferred moving to El Dorado until after his trial; he had planned to go to El Dorado in 1932, but could not get arrangements so that he could move before he was arrested. He had formerly lived in Union county, and his relatives lived there. Mrs. Elam purchased a home in El Dorado at the direction of Paul Elam, using the money paid by the insurance company for Elam's disability to make payments on the home in El Dorado. Witness had made to his wife a power of attorney to transact all business in Arkansas. At the time witness was sentenced he told his wife to break up housekeeping and move to El Dorado, and at all times since witness left Blytheville, he has abandoned Blytheville as his home and has no present intention of returning there. He claims El Dorado as his residence and claimed it ever since he directed his wife to move there and purchase a home. He intends to go there when he is released. He does not own any property in Blytheville, or elsewhere in Arkansas, except the home in El Dorado. His home formerly had at Blytheville is now being foreclosed by the mortgagee. Neither witness nor his wife has any control over same; does not own a home anywhere besides the home in El Dorado.

Mrs. Louise Elam testified that she lives in El Dorado, Union county, Arkansas. Witness was married to Paul Elam, May 25, 1922, and has one child who lives with witness. Paul Elam was arrested on narcotic charge November, 1933, and was out on bond until November, 1934, when he was sentenced. He left Mississippi county for the penitentiary on December 1, 1934. Witness brought with her to El Dorado her husband's sister and his niece, and witness' child. They had been planning to move to El Dorado before he was sentenced. When she moved to El Dorado they were losing their home in Mississippi county. She was getting plaintiff's

check for $50 a month from the defendant company. She went to Union county and purchased a home in pursuance to the direction of her husband. The people who owned the mortgage on the property at Blytheville have control of it and other people are living in it. Neither witness nor her husband has possession or control of the property at Blytheville. She has been in constant correspondence with her husband ever since he has been in the penitentiary. The home was purchased in El Dorado in April, 1935.

The petitioner quotes and relies on § 6150 of Crawford & Moses' Digest. That section provides that an action may be brought against the insurance company taking the risk in the county where the loss occurs. There is no contention that the loss occurred in Union county. That section also provides that the action may be maintained in the county of the residence of the party whose life was insured, and it is earnestly contended that Union county was not the residence of Paul Elam.

They also quote and rely on § 5151 of Crawford & Moses' Digest, which provides that the action may be brought in the county of the residence of the party insured. They also quote and rely on § 5975E of Castle's 1927 Supplement. This section provides that all the provisions applicable to insurance companies shall, so far as the same are applicable, govern and apply to all insurance companies transacting any other kind of business.

The case of *Continental Casualty Co.* v. *Toler,* 188 Ark. 139, 64 S. W. (2d) 322, is cited by petitioner. There is nothing in that case, as we understand it, that touches the question involved here. The court there held that the venue statutes relate to both life and accident insurance.

In this case the contention of the appellant is that Elam was not a resident of Union county. If he was a resident of Union county then it is conceded that the court had jurisdiction. Elam was in the penitentiary in Kentucky, and of course he had no residence in the State of Kentucky in the penitentiary in the sense of our statute as to residence.

The evidence in this case shows that he and his wife had abandoned their home in Mississippi county; that foreclosure proceedings had been begun, and that neither Elam nor his wife had possession or control of what was formerly their home in Mississippi county.

The question before the court was whether Elam's residence was in Union county. In the case of *Grant* v. *Dalliber,* 11 Conn. 234, Dalliber was confined in the State prison as a convict and the court said: "We think it may be said generally, that the place in which a married man's family resides, with his consent, and where he has voluntarily resided with them, as his home, and which he has never abandoned, may well be considered as the place of his abode, unless such residence has been, and was intended to be, temporary and for transient purposes. And such place of residence or usual abode, is not changed or abandoned, by a constrained removal, as by imprisonment." The court further said: "The ground assumed, by the defendant, upon this question, must result in the conclusion, that civil process against persons confined in the state's prison, must always be served upon them personally, within the walls of the prison. If this be so, every officer or indifferent person serving process, must, at all times, have the right and authority to enter the prison, and have intercourse with the convicts. Such a power would be found inconsistent with the safekeeping of prisoners, as well as subversive of the necessary and salutary discipline of the prison; and such a power cannot be exercised."

Elam was imprisoned, not in the State of Arkansas, but in another state, and his residence in Mississippi county was abandoned. He could not go personally to El Dorado with his family because he was confined in the penitentiary, but he did everything he could do after abandoning his home in Mississippi county to establish a residence in Union county. He directed his wife to purchase a home in El Dorado, Union county, with the money he was receiving from the insurance company. She purchased the place and moved with her family to

Union county, and Elam had no other residence. He could not have been a resident, in the sense of our statutes, of the penitentiary or prison in Kentucky. He had clearly abandoned his residence in Mississippi county. Therefore, if he had any place of residence at all, it was in Union county where his family resided at his direction.

The New York court held that his residence could not be in the penitentiary, and that court stated: "Whether the word 'residence' be taken in the sense of domicile or of abode, it implies a place where the party is situated through choice, and where, in some conceivable manner, his personal belongings would be the more readily found; and it has been distinctly ruled that neither in its legal nor in its popular meaning, is the word 'residence' satisfied by an incarceration in any particular place." *American Surety Co. of N. Y.* v. *Cosgrove*, 81 N. Y. S. 945, 40 Miss. 262.

We think the evidence in this case shows that Elam's residence was in Union county, Arkansas; but whether that were true or not, it was a question of mixed law and fact. In the case of *Jarrell* v. *Leeper*, 178 Ark. 6, 9 S. W. (2d) 778, this court said: "The question of residence is a mixed one of law and fact." The court further said in that case: "We may conclude from the cases that, in contemplation of the attachment laws generally, residence implies an established abode, fixed permanently for a time, for business or other purpose, although there may be an intent existing all the while, to return at some time or another to the true domicile; but so difficult is it found to provide a definition to meet all the varying phases of circumstances that the determination of this question may present that the courts say that, subject to the general rule, each case must be decided on its own state of facts."

It is well settled that where the jurisdiction is disputable the granting or refusal of the writ of prohibition is discretionary. *Merchants & Planters Bank* v. *Hammock*, 178 Ark. 746, 12 S. W. (2d) 421.

This court has uniformly held that if the existence or nonexistence depends on contested facts which the

inferior court is competent to inquire into and determine, a writ of prohibition will not be granted although the superior court should be of the opinion that the claims of fact had been wrongfully determined by the lower court, and if rightly determined, would have ousted the jurisdiction. *Roach* v. *Henry,* 186 Ark. 884, 56 S. W. (2d) 577; *Merchants & Planters Bank* v. *Hammock,* 178 Ark. 746, 12 S. W. (2d) 421; *Crowe* v. *Futrell,* 186 Ark. 926, 56 S. W. (2d) 1030.

In this case the question before the trial court on petitioner's motion to quash was one that the trial court had a right to determine, and whether it determined it right or wrong is immaterial. If the trial court had a right to determine the question, and did determine it, then the only remedy was by appeal, and prohibition will not lie.

The writ is denied.

JOHNSON, C. J., concurs in the judgment.

JOHNSON, C. J., (concurring). I concur in the judgment of the court denying the writ of prohibition, but I cannot agree with other portions of the opinion.

In recent cases, notably, *Safeway Cab & Storage Co.* v. *Kincannon, Judge, ante* p. 1019, 96 S. W. (2d) 7, and *Robinson* v. *Means,* 95 S. W. (2d) 98, all the justices concurring, we expressly held that we would not review issuable questions of fact on applications for writs of prohibition and that such applications would be remitted to the trial courts for determination, appeal and consequent review here.

The original opinion recognizes the force of these cases and reaffirms the court's allegiance thereto, but turns about face and expressly decides the issuable facts against the applicant. These issuable facts should not be decided by this court until the cause reaches this court on appeal.