(No. 27521.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES CARMAN, Plaintiff in Error.

*Opinion filed November 19, 1943.*

24

JAMES M. BURKE, of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, of Chicago, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, all of Chicago, of counsel,) for the People.

Mr. CHIEF JUSTICE SMITH delivered the opinion of the court:

This is a writ of error to review a judgment of the criminal court of Cook county. Plaintiff in error, upon a trial before a jury, was found guilty of the crime of armed robbery. He was sentenced to the penitentiary for the term of one year to life.

The sole question involved in the case relates to the statute of limitations. There being no dispute as to the facts upon which the question is raised, it is presented purely as a question of law, dependent upon the construction of the applicable provision of the statute.

The offense was alleged to have been committed on October 12, 1939. The indictment was returned Decem-

ber 16, 1942—three years, two months, and four days after the offense was committed. It was alleged in the indictment that from November 21, 1939, to December 8, 1942, the defendant "was not usually and publicly resident within" the State of Illinois. This was a material averment. It raised a question of fact which the People were bound to prove. (*People* v. *Stajduhar,* 335 Ill. 412.) Without such averment, the indictment would have been quashed on motion, because it showed on its face that it was not found within the limitation imposed by law. Without proof of such averment, the defendant was entitled to invoke the bar of the statute in defense of the action. By a motion for a directed verdict, at the close of the evidence, plaintiff in error raised the question that the proof was insufficient to show that he was not usually and publicly resident within this State, as alleged in the indictment.

Section 3 of division IV of the Criminal Code provides that indictments for felonies of the character here charged, "must be found within three years next after the commission of the crime." (Ill. Rev. Stat. 1941, chap. 38, par. 630.) Section 5 of division IV provides, "No period during which the party charged was not usually and publicly resident within this state shall be included in the time of limitation." Ill. Rev. Stat. 1941, chap. 38, par. 632.

It was stipulated in the record on the trial below, that if plaintiff in error was placed on the witness stand he would testify, "that he lived, and his legal residence was 5131 North Winthrop Avenue, Chicago, Cook County, Illinois; that on or about the 25th of November, A. D. 1939, he visited his father in Mayfield, State of Kentucky, for the purpose of having Thanksgiving dinner with him; that while on such visit he was arrested by the police officers of the State of Kentucky and later extradited to the State of Missouri where he was on the 20th day of March, 1940,

convicted of the crime of robbery, and from thence on-
ward up to, on or about the 8th of December, A. D. 1942,
incarcerated in the Missouri State Penitentiary, Jefferson
City, Missouri." It was further stipulated "that it was
the intention of the said James Carman to immediately
return from Mayfield, Kentucky, to his legal residence."

The question raised by the above facts is whether plain-
tiff in error was "usually and publicly resident within this
State" during the time that he was incarcerated in the
penitentiary in the State of Missouri. He argues with
great confidence, that involuntary confinement in a peni-
tentiary or other prison, would not operate to change his
residence; that during all the time intervening between
the date on which the offense was alleged to have been
committed, and the date on which the indictment was re-
turned, he was a resident of the State of Illinois; that
his involuntary absence did not change his place of resi-
dence, and that such absence cannot be made the basis for
tolling the limitation under section 5 of division IV of the
Criminal Code.

In support of his position he cites many cases which
hold that an involuntary removal does not operate to
change a person's legal residence from the jurisdiction in
which he had an established residence at the time of such
removal. That this is the settled rule of law, no one will
deny. The cases cited and relied upon are of no value
here. They are not in point on the question here involved.
The question in this case is not concerned with the legal
residence of plaintiff in error. Hence, any reference to
the cases cited would be wholly immaterial. All will agree
with the rule which they announce, in a case where that
rule is applicable. The question here is, whether he was
*usually* and *publicly resident* within this State during the
time that he was confined in the penitentiary in Missouri,
and during which time he was, at no time, within the
State of Illinois. The mere statement of the question sug-

gests the answer. In order to take the case out of the words of the statute, tolling the limitation, it is not sufficient that he might at all times have maintained an established and fixed legal residence within the State. It must appear further that he was usually and publicly resident within the State.

In this connection, an analysis of the words of the statute and a brief reference to their meaning will be helpful. The word "usually" is defined by lexicographers to mean such as is in common use; ordinarily, or in the ordinary course of events. It is derived from the word "usual," which means that which happens in the ordinary course of events; that which is customary or according to common practice. It is the antithesis of uncommon; extraordinary; unusual, or abnormal. Webster's New Int. Dictionary 2d ed.; New Standard Dictionary.

From the same authorities we find that the word "publicly" is derived from the word "public." It signifies something which is open to the knowledge or view of all; generally seen, known or heard; activities carried on before the public, or something which is done in an open and public manner; without concealment. It is the antonym of private; secret; secluded or concealed.

The word "resident," when used as an adjective, as in this statute, is synonymous with the word "inhabiting." (Roget's Int. Thesaurus.) The Standard Dictionary also gives as further definitions of the adjective, as having a residence or abiding in a place. When used as a noun, it is defined to mean a dweller, habitant or occupant; one who resides or dwells in a place for a period of more, or less, duration; it is distinguishable from the word inhabitant only as implying less fixity or permanence of abode. When used as a noun it signifies one having a residence; one who resides or abides. "Reside" is there defined as abiding in a place; one who resides. It is a synonym of live, dwell, abide, sojourn, stay or lodge.

Plaintiff in error was not a resident of the address he claimed as his legal residence, in the sense that he occupied it in the manner in common use, nor in the ordinary conception of the use of a residence, according to common practice, or in the ordinary course of events. He did not make the ordinary use of such residence or occupy it according to common practice. During the period of his confinement he did not reside, or abide, within the State of Illinois. On the contrary, his relation, if any, to the place which he claims was his legal residence, was purely technical. It was uncommon, extraordinary and abnormal. If we assume that some address in Chicago constituted his technical legal residence, to which he intended to return after his release, by no stretch of imagination can it be said that he was usually resident at that address during the time here involved. It is conclusively shown by the stipulation that he was not there at any time, for any purpose, during the period of his confinement in Missouri.

It is equally clear that he was not publicly resident within the State. His connection, if any, with the place which he now claims as his legal residence, was not open to the knowledge or general view of all. He was not generally seen, known or heard in or about that place. He was not there engaged in any activities which were carried on before the public. At no time, during the period here material, was he there at all.

Clearly, his connection with the place which he now asserts was his technical legal residence was not sufficient to show that he was usually and publicly resident within the State of Illinois. He, in no sense, was an inhabitant, occupant or dweller therein. Consequently, he does not, and cannot, point out a single element or requirement necessary to exempt him from the operation of the statute. The facts stipulated, as well as his testimony on the witness stand, conclusively established the truth of the aver-

ment in the indictment that he was not, from November 21, 1939, to December 8, 1942, usually and publicly resident within the State of Illinois. The mere suggestion that a man confined in a penal institution in a foreign State is, at the same time, usually and publicly resident within the state of Illinois, to the layman is intuitively impossible; to the lawyer, it is *fallacia consequentis*.

Notwithstanding the rule that involuntary imprisonment cannot change a man's legal residence, section 5 of division IV of the Criminal Code is not based on the legal residence of the defendant. It is based solely upon his absence from the State. This statute does not purport to toll the limitation only in case such absence is voluntary. Such construction would read into the statute words not used by the legislature, and which are contrary to the clear intention therein expressed. This would do violence to all recognized rules of construction. It would accomplish a result wholly foreign to the obvious purpose of the act. The language found in this section is too clear to admit of construction. The words must be given effect in accordance with their ordinary meaning. When this is done, the case presented is one in which the defendant was not usually and publicly resident within the State of Illinois, and the admitted facts in the record were amply sufficient to sustain the appropriate averment in the indictment.

The trial judge did not err in denying the motion for a directed verdict. The sufficiency of the evidence on the merits to sustain the conviction is not challenged. No other errors of law are even suggested.

The judgment of the criminal court of Cook county is affirmed.

*Judgment affirmed.*