GRAYER v. STATE.

353 S. W. 2d 148

Opinion delivered January 29, 1962.

*Elton A. Rieves III,* for petitioner.

*Frank Holt,* Attorney General, by *Russell J. Wools,* Asst. Attorney General, for respondent.

PAUL WARD, Associate Justice.    This Petition for a Writ of Habeas Corpus was filed in this Court as an original action by John Ed Grayer who is incarcerated in the Arkansas State Penitentiary, serving two sentences (one for burglary and one for grand larceny) for

a total of twenty-eight years. Sentences, after conviction, were pronounced on August 21, 1958 by the Circuit Court of Crittenden County.

The petition, an unverified statement, signed by John Ed Grayer (apparently in his own handwriting), sets out, in substance, the following alleged facts:

(a) He was arrested for burglary and grand larceny in 1952 in Crittenden County and placed in jail, but the charges were dropped according to his information. A deputy sheriff of Crittenden County took him to Memphis, Tennessee where he was placed in jail.

(b) He was sentenced to prison in Tennessee where he served four and one-half years in the penitentiary, and then was released.

(c) He visited West Memphis (in Crittenden County) October 13, 1957 where he was arrested for driving while drunk, whereupon the officers there learned his identity.

(d) In August, 1958 he was tried on information for the 1952 offenses and convicted to serve a total of twenty-eight years in the Arkansas Penitentiary.

Petitioner prays that he "receive justice according to the due process of law of this State".

Upon receipt of t he above petition this Court appointed Elton Rieves III of West Memphis to represent the petitioner. The appointed attorney has filed an excellent brief in behalf of the petitioner in which it is forcefully contended that the Circuit Court of Crittenden County had no jurisdiction to try and convict the petitioner, and that therefore he should be released from prison. The petitioner has not in this case brought the records of his convictions before us by way of certiorari, but he has done what amounts to the same thing—he has filed with the Clerk of this Court a duly authenticated record of his convictions in the trial court. We therefore treat his petition as if it were one for certiorari, and will proceed to examine the merits of petitioner's contention

that the trial court had no jurisdiction to try and convict him.

Petitioner relies on Ark. Stats. § 43-1602 to show lack of jurisdiction in the trial court. This section, in all parts material here, reads:

"No person shall be prosecuted, tried, and punished for any other felony unless an indictment be found within three [3] years after the commission of the offense. . . ."

The record of petitioner's 1958 convictions in the Critteden County Court above mentioned contains the information upon which he was tried. It shows he was tried for offenses allegedly committed in 1952—more than three years before trial. Under those facts alone we would be compelled to hold the trial court was without jurisdiction to try the petitioner. See *Pate* v. *Toler*, 190 Ark. 465, 79 S. W. 2d 444, where this Court, in construing § 43-1603 which is analogous in this connection to § 43-1602, said:

"The above section is somewhat more than a statute of limitations, as regards to time. Ordinarily, the statute of limitations in proceedings is a matter of defense, which may be pleaded or be waived. The above section, however, is a limitation upon the power of courts to try one for any offense less than a felony, unless the charge shall have been instituted within the year after the offense charged was committed."

There is another statute however which, we think, nullifies the effect of § 43-1602 in this case when considered in connection with the facts set forth in the record. That statute is § 43-1604 and it reads:

"Nothing in the two preceding sections shall avail any person who shall flee from justice; *and in all cases the time during which any defendant shall not have been a resident of this State, shall not constitute any part of the limitation prescribed in the preceding sections.*" (Emphasis added.)

The petitioner states, as above noted, that he served four and one-half years in the Tennessee Penitentiary between 1952 and 1957. He here contends that during those intervening years he was a resident of Arkansas, and that therefore the three-year statute (§ 43-1602) continued to run during his imprisonment in Tennessee.

The pivotal issue therefore is the determination of what the legislature meant by the word "resident" as it is used in § 43-1604. Is its meaning similar to the word "domicile" or does it imply physical presence?

Petitioner apparently takes the position that, in this situation, "residence" is similar to "domicile" since he cites § 48 in 17A Am. Jur. under the heading "Domicil". In § 1 of the above citation we find this explanation of the topic discussed:

"This article discusses the general principles relating to the nature and elements of domicil. . . ."

Petitioner also relies on the case of *Metropolitan Life Insurance Company* v. *Jones,* 192 Ark. 1145, 97 S. W. 2d 64, but that decision is not in point. That case construes C. & M. Digest § 6150 (Ark. Stats. § 66-516) which relates to the proper venue of a suit on an insurance policy.

We find no decision of this or any other Court exactly in point which construes a statute like the one here involved. There are, however, certain reasons and related decisions that lead us to conclude that the word "resident" as used in our statute refers to a person who is physically present in the state in the sense that petitioner would not be a resident of this State while he was incarcerated in Tennessee. It seems to us that any other interpretation would defeat the obvious purpose of the statute. Under the facts before us it cannot be said that it was the fault of this State that petitioner was not brought to trial within three years after he committed the crimes for which he was convicted. In the case of *Pellegrini* v. *Wolfe, Judge,* 225 Ark. 459, 283 S. W. 2d 162, we construed Ark. Stats. § 43-1708 which requires,

generally, that a person indicted for a crime must be tried before two terms of court have elapsed. Pellegrini, who was in a Texas prison, sought relief under the above statute, and we said:

". . . Pellegrini is not now entitled to claim relief under the two-term-discharge Statute because he is only now bringing himself within the purview of the Statute."

We further pointed out that "Pellegrini has a right to ask Arkansas to bring him here for trial. . . ." In the above cited case, just as in the case under consideration, the State of Arkansas was not at fault in failing to prosecute the accused within the time allotted by the statutes. In a situation such as confronts us here, we think the rule set forth in C. J. S. is reasonable and realistic. In Vol. 54, under the heading of *Limitations of Actions,* sub-head *Residence,* § 212, at page 236, it is stated:

"In construing and applying statutes of the kind under consideration it has been held that 'residence' and 'domicile' are not convertible terms, and that the statute simply contemplates a residence of such permanency that, generally speaking, the person in question may be found in the state and served with ordinary legal process at any time."

In the case of *People* v. *Carman,* 385 Ill. 23, 52 N. E. 2d 197, the Court construed an Illinois Statute of Limitations similar to our § 43-1604 above quoted. In that case the Court dwelled at length on the meaning of the word *resident.* Among other things the Court said:

"The word 'resident', when used as an adjective, as in this statute, is synonymous with the word 'inhabiting'. Roget's Int. Thesaurus. The Standard Dictionary also gives a further definition of the adjective, as having a residence or abiding in a place. When used as a noun, it is defined to mean a dweller, habitant or occupant; one who resides or dwells in a place for a period of more, or less, duration; it is distinguishable from the word inhabi-

tant only as implying less fixity or permanence of abode. When used as a noun it signifies one having a residence; one who resides or abides. 'Reside' is there defined as abiding in a place; one who resides. It is a synonym of live, dwell, abide, sojourn, stay or lodge.''

Black's Law Dictionary defines the word ''reside'' to mean: ''Live, dwell, abide, sojourn, stay, remain, lodge.'' It defines ''residence'' as ''A factual place of abode. Living in a particular locality.''

From all we have heretofore said it is our conclusion that the petitioner was not a resident of Arkansas during the time he was a prisoner in Tennessee, and that, therefore, the Crittenden County Circuit Court had jurisdiction to try and convict him in 1958 for crimes committed in 1952 upon an information filed in 1957 as shown in the record.

Writ denied. If the petitioner desires to file a Petition for a Writ of Habeas Corpus in the Circuit Court, this Certiorari proceeding will not prejudice any rights he may have to do so, except as to any point foreclosed by this opinion.

ROBINSON and JOHNSON, JJ., dissent.

SAM ROBINSON, Associate Justice, dissenting. On January 9, 1953, the petitioner, a resident of Arkansas, was arrested in Crittenden County for the crime of Burglary and Grand Larceny said to have been committed in the year 1952. No charge was preferred against him; no felony information was filed against him by the Prosecuting Attorney and the Grand Jury returned no indictment, but he was not released.

On January 11 he was taken to Memphis by Arkansas officers and turned over to Tennessee authorities. He was then sent to the Tennessee Penitentiary for a crime committed in that state.

In 1957, after serving four and one-half years he was released. No charge had been preferred against him in Arkansas and no holdover had been placed

against him in Tennessee. After having been released from the Tennessee prison in 1957 he returned to his home in Arkansas and was arrested for driving while drunk. Then, in 1957, for the first time, more than five years after the alleged crime was committed, he was charged in Arkansas with having committed the crimes of Burglary and Grand Larceny in Arkansas, in 1952.

Considering these facts, I do not believe petitioner was a non-resident of the State of Arkansas within the meaning of Ark. Stats. (1947) § 43-1604, during the time he was in the Tennessee Penitentiary. It will be recalled that the petitioner did not voluntarily leave the State of Arkansas. In January, 1953, the Arkansas officers had him in jail for the alleged crime, but no charge was filed against him. It was not until 1957 that he was charged with the offense. In 1953 the Arkansas officers had delivered him to Tennessee. The majority has denied the petition solely on the ground that during the time the petitioner was in the Tennessee Penitentiary he was not a resident of Arkansas. In my opinion such holding is against the weight of authority and does not correctly construe our statute. The majority point out that the trial court did not have jurisdiction to try the defendant unless he was a non-resident of this state within the meaning of Ark. Stats. (1947) § 43-1604 during the time he was confined in the Tennessee Penitentiary. *Pate* v. *Toler,* 190 Ark. 465; 79 S. W. 2d 444.

Ark. Stats. (1947) § 43-1604 provides:

"43-1604. Fugitives — Nonresidents. — Nothing in the two preceding sections [three-year Statute of Limitations] shall avail any person who shall flee from justice; and in all cases the time during which any defendant shall not have been a resident of this State, shall not constitute any part of the limitation prescribed in the preceding sections."

The majority say that our case of *Metropolitan Life Insurance Company* v. *Jones,* 192 Ark. 1145, 97 S. W. 2d 64, is not in point with the case at bar. I fail to see why it is not in point. The question in the case at bar is

whether Grayer, the petitioner, was a resident of Arkansas during the time he was in the Tennessee Penitentiary. In the *Metropolitan* case the question was whether one Elam was a resident of Arkansas during the time he was in the Kentucky Penitentiary; this Court said: "The evidence shows that Paul Elam lived in Mississippi County, and while living there he was convicted and sentenced to the federal penitentiary . . . Such place of residence or usual abode [in this case Arkansas] is not changed or abandoned by a constrained removal as by imprisonment . . . Whether the word "residence" be taken in the sense of domicile or of abode, it implies a place where the party is situated through choice, and where, in some conceivable manner, his personal belongings would be the more readily found; and it has been distinctly ruled that neither in its legal nor in its popular meaning, is the word 'residence' satisfied by an incarceration in any particular place."

The majority say it was not the fault of this State that the petitioner was not brought to trial within three years from the time the crime is alleged to have been committed and cites *Pellegrini* v. *Wolfe, Judge,* 225 Ark. 459, 283 S. W. 2d 162. That case is not in point with the case at bar. Pellegrini contended that he was entitled to have the charge against him dismissed because he had not been brought to trial within two terms of court as provided by Ark. Stats. (1947) § 43-1708. This Court pointed out that the State could not bring him to trial because he was in the Penitentiary in Texas, but the Court did indicate that Pellegrini should make an effort to get the Arkansas authorities to bring him to trial by making some arrangement with the State of Texas as is done where Federal prisoners are charged with an offense by the State.

In the case at bar, it is not a question of the State of Arkansas having failed to bring the petitioner to trial—it is the question of having failed to file any charge against him for more than three years after the offense is alleged to have been committed. There was nothing

whatever to keep the Prosecuting Attorney from filing a felony information or the Grand Jury from returning an indictment, and if this had been done the defendant could have petitioned the Court for an order setting his case for trial as the court pointed out the defendant could do in the Pellegrini case. Here the defendant could not petition the Court for a trial when no charge of any kind was pending against him, and there was no point in attempting to get and preserve evidence in his favor when he had no reason to believe that any charge would be filed against him.

As authority for holding that our Statute of Limitations does not apply in the case at bar, the majority cite *People* v. *Carman*, 385 Ill. 23, 52 N. E. 2d 197. The Illinois statute is entirely different from ours. Ill. Rev. Stat. 1941, Ch. 38, Par. 632. Section 5 of Div. 4 provides: ''No period during which the party charged was not usually and publicly a resident within this State shall be included in the time of limitation.''

The words ''usually'' and ''publicly'' are not in our statutes and the Illinois case turns squarely on those words. The Illinois Court said: ''In this case, an analysis of the words of the statute and a brief reference to the meaning will be helpful. The word 'usually' is defined by lexicographers to mean such as in common use; ordinarily, or in ordinary course of events. It is derived from the word 'usual' which means that which happens in the ordinary course of events; that which is customary or according to common practice. It is the antithesis of uncommon; extraordinary; unusual, or abnormal . . . From the same authorities we find that the word 'publicly' is derived from the word 'public'. It signifies something which is open to the knowledge or view of all; generally seen, known or heard, activities carried on before the public, or something which is done in an open and public manner; without concealment.''

It will be recalled that our statute merely tolls the running of the Statute of Limitations during the time

the defendant "shall not have been a resident of this State." There is a great difference between our statute and the Illinois statute; our statute does not contain the words "usually" and "publicly".

In citing the Illinois case, 22 Corpus Juris Secundum 606 emphasizes the words "usually" and "publicly" used in the Illinois statutes but not used in the Arkansas statutes.

In the case of *Town of Freeport* v. *Board of Supervisors,* 41 Ill. 495, the Illinois Court said: "A person imprisoned under operation of law does not thereby change his residence." To the same effect is *Clark* v. *Robinson,* 88 Ill. 498. "And such place of residence or usual abode, is not changed or abandoned, by a constrained removal or by imprisonment." *Grant* v. *Dalliber,* 11 Conn. 233.

"Nor can a person committed to prison gain residence where the prison is situated. He retains his residence at his abode or home before his commitment. A residence can only be acquired by voluntary choice or by right." *Shaffer* v. *Tepper,* 127 F. Supp. 892. In the case last mentioned, a resident of Ohio was involuntarily incarcerated in the Kentucky State Penitentiary. In *Topsham* v. *Lewiston,* 74 Maine 236, the Court said: "He had never abandoned this as his place of residence; he had left it by constraint. The State prison was not the place of his abode; it was his place of punishment and while there he was absent from home."

In the case at bar the petitioner did not voluntarily leave the State of Arkansas. He was taken to Tennessee by officers of the State of Arkansas. In my opinion he was still a resident of this State within the meaning of our statute. Therefore, I think the charge preferred against him in 1957 for a crime alleged to have been committed in 1952, was barred by our three-year Statute of Limitations. I would, therefore, grant the petition.

Mr. Justice JOHNSON joins in this dissent.