No. 88-609

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

MICHAEL DUANE STILLINGS,

Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

E. June Lord, Great Falls, Montana

For Respondent:

Hon. Marc Racicot, Attorney General, Helena, Montana
John Paulson, Asst. Atty. General, Helena
Patrick Paul, County Attorney, Great Falls, Montana
Steven Hudspeth, Deputy County Attorney, Great Falls,
Montana

Submitted on briefs: Aug. 3, 1989

Decided: August 24, 1989

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Defendant Michael Duane Stillings appeals his conviction by the District Court of the Eighth Judicial District, Cascade County, for committing perjury by making two, inconsistent, material statements under oath in an official proceeding in violation of section 45-7-201(6), MCA (1987). We affirm.

The defendant raises the following issues on appeal. Did the District Court err in denying the defendant's motion to dismiss the information when the District Court found that either:

1) the defendant's act of perjury under section 45-7-201(6), MCA (1987), was not complete, and therefore the statute of limitations did not begin to run until the defendant made a material statement under oath that was inconsistent with this previous testimony; or, in the alternative

2) under section 45-1-206(1), MCA (1987), the defendant's out-of-state incarceration tolled the statute of limitations on his first statement so that both statements fell within the five year statute of limitations?

On the night of February 23, 1971, Vicki Renville was raped and bludgeoned to death in the Wadsworth Park area of Great Falls, Montana. During the resulting murder trial, Michael Stillings testified on October 4, 1971, that he and Fred Lee Perry raped Renville and that when she threatened to "rat," Perry repeatedly struck Renville on the head with a tire iron. Perry was subsequently convicted of second degree murder. See State v. Perry (1973), 161 Mont. 155, 505 P.2d 113 (affirming the District Court decision). Stillings pled guilty to the same charge and received a sixty-year sentence with ten years suspended.

Stillings was incarcerated in the Montana State Prison on November 29, 1971. On December 6, 1971, he was transferred to the California prison system under the provisions of the Interstate

Correctional Compact Agreement to prevent his confinement in the same prison as Perry. California paroled Stillings to Washington on August 18, 1978. On February 14, 1979, Stillings was arrested and subsequently convicted of armed robbery in Washington. After he served five years of his thirty-five year sentence, Washington paroled Stillings to Montana on detainer on April 20, 1984. Montana revoked Stillings' parole on his second degree murder charge returning him to the Montana State Prison.

In 1986 the California prison system transferred Perry to Deer Lodge placing Stillings and Perry in the same prison for the first time. Stillings soon indicated that he would recant his previous testimony against Perry, and Perry applied for a new trial. During the new trial hearing on July 24, 1987, Stillings disavowed his 1971 testimony against Perry and stated under oath that he, and not Perry, had killed Vicki Renville. The trial court, however, did not find Stillings' testimony credible and refused to grant Perry a new trial. See State v. Perry (Mont. 1988), 758 P.2d 268, 45 St.Rep. 1192 (affirming the District Court decision).

On September 25, 1987, the Cascade County Attorney filed an information against Michael Stillings charging that Stillings committed perjury by making two, inconsistent, material statements under oath in violation of section 45-7-201, MCA (1987). Stillings filed a motion to dismiss the information on the grounds that the statute of limitations had run. The District Court denied the motion. Defendant Stillings then filed an application for writ of supervisory control on the same grounds and the Montana Supreme Court denied the petition. In the ensuing bench trial, the District Court found the defendant guilty and sentenced him to ten years for perjury and ten years as a persistent felony offender. The District Court also revoked the ten-year suspended sentence on Stillings' second degree murder conviction and ordered that all

sentences run consecutively. Defendant Stillings now appeals his perjury conviction.

I.

Did the District Court err in its alternative finding that the defendant's act of perjury under section 45-7-201(6), MCA (1987), was not complete, and therefore the statute of limitations did not begin to run until the defendant made a material statement under oath that was inconsistent with his previous testimony?

Montana's perjury statute provides that:

> A person commits the offense of perjury if in any official proceeding he knowingly makes a false [material] statement under oath . . . .

Section 45-7-201(1), MCA (1987).

The statute further provides that:

> Where the defendant made inconsistent statements under oath or equivalent affirmation, both having been made within the period of the statute of limitations, the prosecution may proceed by setting forth the inconsistent statements in a single count alleging in the alternative that one or the other was false and not believed by the defendant. In such case it shall not be necessary for the prosecution to prove which statement was false but only that one or the other was false and not believed by the defendant to be true.

Section 45-7-201(6), MCA (1987).

The defense in this case argues that by the plain language of the inconsistent testimony provision, both statements must be made within the five year statute of limitations for felony crimes. Stillings contends that because seventeen years lapsed between his statements, the statute of limitations had run before the prosecution filed its information against him. We disagree.

The statute of limitations did not run because the statute was triggered only by Stillings' second statement which completed the

4

crime of perjury under section 45-7-201(6), MCA (1987). The statute of limitations clearly states when the time limitation begins to run:

> A prosecution for a felony must be commenced within 5 years after it is <u>committed</u>.

Section 45-1-205(2)(a), MCA (1987). (Emphasis added.)

> An offense is committed either when every element occurs or, when the offense is based upon a continuing course of conduct, at the time when the course of conduct is terminated. Time starts to run on the day after the offense is committed.

Section 45-1-205(5), MCA (1987).

Commission of the crime of perjury by making inconsistent, material statements under oath requires at a minimum that the accused has made two conflicting statements. When a witness makes conflicting statements under oath, it is axiomatic that one is false so long as all other elements of perjury can be satisfied. This statute expedites prosecution by eliminating the needless requirement of proving which statement is false. The intrinsic falsity of the accused's testimony arises, and the crime is complete, only when the inconsistent testimony occurs. The statute of limitations, therefore, cannot begin to run at least until the defendant has completed the crime by making the indispensable, second statement.

The issue raised by the defendant accentuates an underlying contradiction in the inconsistent testimony statute. A crime under this statute cannot be completed, and the statute of limitations does not begin to run, until the defendant makes at least two allegedly inconsistent statements. However, the statute declares that "both [statements must be] made within the period of the statute of limitations." Section 45-7-201(6), MCA (1987). By including the first statement, which might be entirely true, within

5

the period of limitations, this clause would trigger the statutory period before any crime has been committed. The statute entices the unscrupulous witness to falsely recant five-year-old, credible testimony and insulate himself against prosecution under this statute. We invite the legislature to consider an appropriate remedy to this problem.

In the present case, application of this questionable statutory clause would still not have provided grounds for barring the prosecution's information.

## II.

Did the District Court err in its alternative finding that under section 45-1-206(1), MCA (1987), the defendant's out-of-state incarceration tolled the statute of limitations on his first statement so that both statements fell within the five year statute of limitations?

Section 45-1-206, MCA (1987), provides that:

> The period of limitation does not run during: (1) any period in which the offender is not usually and publicly resident within this state or is beyond the jurisdiction of this state . . . .

The defendant argues that during the time he was incarcerated in California on his second degree murder charge, he was still under Montana jurisdiction. While this contention may be true, we make no determination on this issue since it is not relevant.

Section 45-1-206(1) is written in the disjunctive and either clause is sufficient in itself to toll the statute of limitation. Failure of the criminal defendant to be "usually and publicly resident within this state" will itself interrupt the running of the statutory period regardless of jurisdiction. The statute is also tolled when the criminal defendant is "beyond the jurisdiction of the state" regardless of his place of residence.

6

The Criminal Law Commission Comments on section 45-1-206 are also written in the disjunctive and note that:

> Subsection (1) tolls the statute for the offender who is absent from this state, or absents himself from his usual place of abode and makes some effort to conceal himself.

Again, each clause is sufficient to toll the statutory period. Absence from the accused's usual abode coupled with attempts at concealment will toll the statute. Absence from the state will, independently, interrupt the statutory period. We therefore hold that the mere absence of the criminal defendant from the state is sufficient to toll the statute of limitations.

The majority of states interpreting similar statutes have also concluded that a criminal defendant's mere absence from the state is sufficient to toll the statute of limitations. See State v. Nelson (Ariz. App. 1988), 755 P.2d 1175; State v. Wright (Utah 1987), 745 P.2d 447; State v. Houck (Kan. 1986), 727 P.2d 460; State v. Ansell (Wash. App. 1984), 675 P.2d 614; State v. Azzone (Minn. 1965), 135 N.W.2d 488; State v. Lupino (Minn. 1964), 129 N.W.2d 294; Grayer v. State (Ark. 1962), 353 S.W.2d 148; Couture v. Commonwealth (Mass. 1958), 153 N.E.2d 625; Traxler v. State (Okla. Crim. App. 1953), 251 P.2d 815.

A number of states have applied this principle to cases similar to that of Stillings. In the seminal case of People v. Carman (Ill. 1943), 52 N.E.2d 197, the Illinois Supreme Court first interpreted the statutory exclusion for periods during which the defendant was "not usually and publicly resident within this state." The court defined "resident" by its common meaning and held that the statute of limitations was tolled during the Missouri incarceration of the defendant even though he remained a legal resident of Illinois. Carmen, 52 N.E.2d at 199-200. Similarly,

7

Stillings' incarceration in Washington on armed robbery charges tolled the statute of limitations.

The fact that Stillings' whereabouts were known to Montana law enforcement officials throughout his absence does not change the rule. The Washington Court of Appeals held that the absence from the state of a first-degree statutory rape defendant was sufficient to toll the statute of limitations even though the defendant's whereabouts were easily determinable by law enforcement officials. State v. Ansell (Wash. App. 1984), 675 P.2d 614, 617.

The ability of Montana to force the return of Stillings at any point during his time in California and Washington does not affect the tolling of the statutory period. The Washington courts held that the statute was tolled on a first-degree robbery defendant incarcerated in Oregon who was available for extradition under the Interstate Agreement on Detainers. State v. Newcomer (Wash. App. 1987), 737 P.2d 1285, 1290.

Similarly, Montana's maintenance of some control of Stillings during his California incarceration for his Montana murder conviction did not overcome the tolling of the statute. In an analogous case the Kansas Supreme Court held that a criminal defendant voluntarily paroled to Arkansas from the Kansas prison system and under the control of Kansas parole officials was not in the custody of the State of Kansas and therefore the statute tolled during his absence. State v. Houck (Kan. 1986), 727 P.2d 460, 465-66.

In each of these cases, the principle is the same as that which we adopt today; mere absence from the state is sufficient to toll the statute of limitations for a criminal defendant.

If the statute of limitations were applied to Stillings' first statement, it would have been triggered by his testimony on October 4, 1971. The defendant left Montana for incarceration in California on December 6, 1971, tolling the statutory period at two

8

months. He returned to prison in Montana on April 20, 1984, restarting the statute of limitations which ran until the prosecution filed its information on September 24, 1987--a period of three years and five months. The statute of limitations, therefore, ran for three years and seven months and fell well within the five year statutory period.

We find that the District Court was correct in both of its alternative holdings. Stillings' mere absence from the state tolled the statute of limitations. Even if the statutory period had not been tolled, it could not have begun to run until Stillings made a material statement under oath that was inconsistent with his previous testimony.

Affirmed.

Chief Justice

We concur:

Justices