(Decided 17th November, 1892.)

----

The GLOBE RESERVE MUTUAL LIFE INSURANCE COMPANY OF BALTIMORE CITY *vs.* HARVEY B. DUFFY, and MORRIS H. SULTAN.

*Action on Life Policy—False representations by Agent of Insurance Company—Ignorance of Applicant—Principal and Agent—Estoppel—Instructions to Jury—Payment of Assessments—Assignment by Assured.*

There are many cases in which, to prevent gross fraud and injustice, an insurance company is estopped, on grounds of the highest public policy, to object that the statements made by its agents beyond the scope of their authority are false. But there must

*Globe Reserve Mut. Life Ins. Co. vs. Duffy.*

be no complicity on the part of the assured; because, if false answers be written in the application by the agent with the knowledge of the assured, the latter becomes an accomplice, and both perpetrate a fraud upon the company; in such case a recovery cannot be permitted upon a policy thus procured.

Where false answers have been written by the agent without the knowledge of the assured, but the latter has the means at hand to discover the falsehood and negligently omits to use them, he will be regarded as an instrument in the perpetration of the fraud, and no recovery can be had upon the policy.

If the assured be neither an accomplice nor an instrument, and be imposed upon without fault on his own part by the agent of the company, his beneficiary will be entitled to recover, notwithstanding the statements are inaccurate or untrue.

In an action on a policy of life insurance, the plaintiff asked the Court to instruct the jury that "if any of the answers in the application for insurance of M. M. were written down by the agent or examining physician of the defendant, and were known to such agent or physician to be inaccurate or untrue, then, if the jury believe that the said M. M. was an ignorant colored man, the untruth of such answers will not vitiate the policy of insurance, unless the said M. M. and the said agent or physician fraudulently combined together to defraud the defendant." HELD :

That this instruction was erroneous and misleading, as the assured might well have been an ignorant colored man, and yet have known that the answers written down for him by the agent were false.

If the insurance company, by the form of its policy, or by the acts of its agents, induce the assured to believe that the policy is valid from its date, it cannot, without being guilty of fraud, assert the opposite when sued upon the policy.

A policy provided for levying assessments during the first week in certain months. September was one of those months, and on that month the company failed, through an oversight, to make the levy. On the 28th of the same month the assured died, without having paid his assessment for the month. In an action on the policy by two assignees of the assured, it was HELD :

1st. That the company having failed to make the levy it could not rely upon its own failure to defeat the policy.

Globe Reserve Mut. Life Ins. Co. *vs.* Duffy.

2nd. That the defendant could not avail itself of the defence that only one of the assignees had an existing demand, the other having assigned his claim, the only proof of his assignment being that "he had assigned his claim in the suit prior to the trial," as it did not appear whether he had made a formal written assignment or not, whether he made it before or after suit, or whether it was absolute or conditional.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiffs offered the four following prayers:

1. That if the defendant, either by the form of its policy or the action of its agents, caused Moses Mason to believe that the policy of insurance sued on in this case was operative and effective from the date of its issue, the defendant is precluded from now insisting that such is not the case.

2. That on any proper construction of the policy sued on in this case, the same was operative and effective from the date of its issue.

3. That if any failure to pay any assessment due or alleged to be due under this policy was caused by the neglect or omission of the defendant's officers to send to the plaintiffs any notice of such assessment, no advantage can be taken in this action of such failure or omission to pay such assessment.

4. That if any of the answers in the application for insurance of Moses Mason were written down by the agent or examining physician of the defendant, and were known to such agent or physician to be inaccurate or untrue; then, if the jury believe that the said Moses Mason was an ignorant colored man, the untruth of such answers will not vitiate the policy of insurance, unless the said Moses Mason and the said agent or physician

fraudulently combined together to defraud the defendant.

The defendant offered the two prayers following:

1. If the jury find from all the evidence in the case that Moses Mason, at the time when the policy in this suit was applied for, was a sufferer from pulmonary trouble, or abscess of the kidneys, and that he knowingly concealed such fact in his statement to the defendant, then the plaintiffs are not entitled to recover.

2. If the jury find the execution of the policy and application offered in evidence, then the plaintiffs are not entitled to recover, unless the jury further find that a first assessment had been actually paid during the life of said Moses Mason, and while he was in good health; provided, the jury further find that in the regular course of business no assessment could have been levied before the death of said Moses Mason.

The defendant objected to the plaintiffs' prayers and filed the following special exceptions:

1. The defendant specially excepts to all the prayers of the plaintiffs, because, by the undisputed proof, only one plaintiff claims to have an existing demand, the other having assigned his claim.

2. To the first prayer, because there is no evidence of any such action or declaration as therein stated.

3. To the third prayer, because there is no evidence that either the answers were written down as stated, or were known to said officers, or either of them, to be untrue, or that the applicant was ignorant.

The Court (STEWART, J.,) overruled said exceptions, and granted the plaintiffs' first, third and fourth prayers, and rejected their second prayer, and granted the defendant's first prayer and rejected its second prayer. The defendant excepted, and the verdict and judgment being against it, appealed.

Globe Reserve Mut. Life Ins. Co. *vs.* Duffy.

The cause was argued before ROBINSON, BRYAN, FOW-
LER, ROBERTS, and MCSHERRY, J.

*Lewis Hochheimer*, for the appellant.

*Ralph Robinson*, and *Isaac L. Straus*, for the appellees.

The medical examiner was the agent of the company.
The company is therefore responsible for his acts in
filling up the application. *Hurd vs. Masonic Mutual
Benefit Society*, 6 *Ins. Law Journal*, 792; *Keystone Mut.
Benefit Association vs. Jones*, 72 *Md.*, 365; *Flynn vs.
Equitable Life Ins. Co.*, 78 *N. Y.*, 568, 573; *Com. Life
Ins. Co. vs. McCurdy*, 8 *Ins. Law Journal*, 509; *Planters'
Mutual Ins. Co. vs. Deford*, 38 *Md.*, 402.

"Although an application contains a false statement
as to a material matter, the writing must still be held
to express a contract between the parties, and that
neither party can insist that the contract is other than
what the writing expresses, providing such false state-
ment is chargeable to the agent of the company in filling
up the application while acting in the line of his duty."
" That in performing these preliminary labors the agent
is engaged in taking the application which is strictly
within his duty, and the principal should be held
responsible for any error he may commit, especially
where the error consists in recording a false statement
over the signature of a confiding applicant which it is
claimed vitiates the whole contract." *Plumb vs. Cat-
taraugus Co. Mut. Ins. Co.*, 18 *N. Y.*, 392; *Rowley vs. Em-
pire Ins. Co.*, 36 *N. Y.*, 550; *Bliss on Life Insurance, secs.*
80, 290; *Insurance Co. vs. Wilkinson*, 13 *Wallace*, 222;
*Combs vs. Hannibal Savings and Ins. Co.*, 43 *Mo.*, 148; *Con-
tinental Life Ins. Co. vs. Thoena*, 26 *Ill. App.*, 501; *Atlan-
tic Ins. Co. vs. Wright*, 22 *Ill.*, 474; *Roth vs. City Ins. Co.*,
6 *McLean* (*C. C.*,) 324; *Smith vs. Ins. Co.*, 24 *Penn. St.*,
320.

The agent's knowledge of facts incorrectly stated in the application forwarded to the company is knowledge of the company, and prevents the latter from availing itself of a defence founded on the incorrectness of the application. *Bliss on Life Insurance, sec.* 294; *also sec.* 80 (*p.* 121); 1 *May on Insurance, sec.* 132, *and citations in notes* 5 *and* 6; *People's Ins. Co. vs. Spencer,* 53 *Penn. St.,* 353; *Campbell vs. The Merchants', &c. Ins. Co.,* 37 *New Hamp.,* 35; *McArthur vs. Globe, &c., Ins. Co.,* 14 *Hun,* 348; *Peoria, &c., Insurance Co. vs. Hall,* 12 *Michigan,* 202; *Protection Ins. Co. vs. Harmer,* 2 *Ohio St.,* (*N. S.*) 452; *Masters vs. Madison Co. Mut. Ins. Co.,* 11 *Barb.,* 624; *Atlantic Ins. Co. vs. Wright,* 22 *Ill.,* 474; *Andes Ins. Co. vs. Fish,* 71 *Ill.,* 620.

The law as established by the authorities above cited, and by others referred to by them, is in addition sustained by the plainest dictates of justice and the highest considerations of public policy. In the emphatic language employed by the Court in one of the cases above (11 *Barb.,* 632), it would be little less than "legalized robbery" to allow these insurance companies, after receiving benefits of the risk accruing to them, to shield and absolve themselves from liability under some "ingeniously devised technicality" or the culpability or incompetence of their own agents.

"It is clear that if the insurer himself knows the fatal fact and afterwards recognizes the contract of insurance as valid by receiving premiums, making assessments, etc., he should be held; *good faith and certainty require it.* Were it not for being lulled into security the insured would not uselessly pay out his money but would procure new insurance." 1 *May on Insurance, sec.* 144 *g.*

When it is considered that the first prayer of the defendant was granted by the Court, and that this prayer presented the case in the strongest possible light for the defendant, not the slightest objection upon the part of

the appellant should be entertained by this Court to the instructions embodied in both prayers.

The second prayer of the defendant was properly rejected.

First. Because by the terms of the policy the appellant contracted to send notice of all assessments due it by the assured. This obligation was absolute, and the company could not upon a failure to comply therewith avail itself of its default to defeat its liability upon the policy.

Second. Because there is no evidence in the record that such assessment could not have been levied had the appellant exercised ordinary diligence.

McSHERRY, J., delivered the opinion of the Court.

On the fourth of August, 1886, the Globe Benefit Reserve Mutual Life Insurance Company of Baltimore City, issued a policy upon the life of Moses Mason, and a few days thereafter the assured assigned the policy to the appellees. On the twenty-eighth of September following Mason died. Proofs of death were furnished, but the company refused to pay the insurance, and this suit was thereupon instituted. The only questions arising on the pending appeal are presented by the prayers for instructions to the jury, and the principal one of these is brought before us by the fourth instruction given at the instance of the appellees. It is in these words: "The plaintiffs pray the Court to instruct the jury that if any of the answers in the application for insurance of Moses Mason were written down by the agent or examining physician of the defendant, and were known to such agent or physician to be inaccurate or untrue, then, if the jury believe that the said Moses Mason was an ignorant colored man, the untruth of such answers will not vitiate the policy of insurance, unless the said Moses Mason and the said agent or physician fraudulently combined together to defraud the defendant."

It appears by the record that the medical examiner wrote down the answers to the various questions upon the printed application, and amongst the answers given it was stated that Mason had no pulmonary and no kidney trouble. This application was signed by Mason, and was the basis upon which the policy was issued. The medical examiner testified to the truth of these answers. The company offered evidence tending to prove that Mason had, when he signed the application, and for some years prior thereto, had had both pulmonary and kidney trouble, from which he died in less than two months after the date of the policy. In this state of conflicting evidence the instruction under review was granted.

If the medical examiner was the agent of the company, it surely requires no argument to show that it was not within the scope of his authority to mislead and deliberately impose upon his principal. His agency, from the very nature of the case, was confined to eliciting the truth, and did not extend to substituting falsehood therefor. He was not an agent to procure false answers, but true ones. It cannot be supposed that the company clothed him with authority to perpetrate a fraud upon itself. Notwithstanding this is so, there are many cases in which, to prevent fraud and gross injustice, an insurance company is estopped, on grounds of the highest public policy, to object that the statements made by its agents beyond the scope of their authority are false. But there must be no complicity on the part of the assured; because, if false answers be written in the application by the agent with the knowledge of the assured, the latter becomes an accomplice and both perpetrate a fraud upon the company. In such a case it is obvious that a recovery could not be permitted upon a policy thus procured. And so, where false answers have been written by the agent without the knowledge of the assured, but the latter has the means at hand to discover the false-

hood and negligently omits to use them, he will be regarded as an instrument in the perpetration of the fraud, and no recovery could be had upon the policy. *New York Life Ins. Co. vs. Fletcher*, 117 *U. S.*, 519; *Ryan vs. World Mutual Life Ins. Co.*, 41 *Conn.*, 168; *Lewis vs. Phœnix Mutual Life Ins. Co.*, 39 *Conn.*, 100. If the assured be neither an accomplice nor an instrument, and be imposed upon without fault on his own part by the agent of the company, his beneficiary will be entitled to recover, notwithstanding the statements are inaccurate or untrue. *Keystone Mut. Ben. Association vs. Jones*, 72 *Md.*, 363.

Where the assured is either an accomplice in the fraud or an instrument in its perpetration, it is perfectly manifest that a recovery founded upon a policy procured by such means would permit the beneficiary to reap the fruits of the misdeeds of others. It would be no answer to say that the agent of the company was as deeply implicated in the fraud as the assured; for in the one case the conspiracy of both, and in the other the misconduct of the agent and the inexcusable negligence of the assured, induced the insurer to assume a risk that would not otherwise have been written. The insurer in both instances would be made the victim of the bad faith of the assured, if a recovery were allowed. But the broad principle which precludes one from taking advantage of his own wrong, would equally interpose to prevent the insurer from relying upon the false statements made by his own agent, when the assured has acted in perfect good faith and with due diligence, and has made no misrepresentations himself. The instruction we are considering goes far beyond this latter doctrine, and permits a recovery if the agent knowingly wrote down false statements, and the assured was "an ignorant colored man." But ignorant of what? Of the falsity of material statements which he subscribed as true? or, being cognizant of that,

ignorant of something else wholly different? If the
former, as put, it was palpably misleading; if the latter,
it was utterly wrong in principle. In either event it
was error to grant the instruction. He might well have
been an ignorant colored man, and yet have known that
he had pulmonary and kidney trouble at the very time
he declared he had them not. His ignorance, to be
availing, must have been ignorance of the falsity of the
answers written down for him by the agent. His knowl-
edge of their untruth, though coupled with the most
dense ignorance on all other subjects, made him, if not
an accomplice, at least a voluntary instrument in prac-
ticing a deception, and the policy was thereby vitiated.
The instruction as framed, was erroneous and mislead-
ing and should have been refused.

The third instruction was conceded in the argument
at bar to be correct.

The first was properly granted. If the insurance
company, by the form of its policy, or by the acts of its
agents, induced the assured to believe that the policy
was valid from its date, it cannot, without being guilty
of fraud, assert the opposite now.

The second prayer presented by the appellant was
properly refused. It asks the Court to say to the jury
that a recovery could not be had unless they found ''that
a first assessment had been actually paid during the life
of said Moses Mason, and while he was in good health;
provided, the jury further find that in the regular course
of business no assessment could have been levied before
the death of said Moses Mason.'' It was competent to
the company to provide, as it did, in the applications for
membership which were made a part of the policy, that
the policy should not become effective until the first
assessment had been paid. The policy stipulated that
''assessment notices will be regularly mailed, dated the
first week day in January, March, May, July, Septem-

ber, and November.'' The seventh "instruction to members" printed on the back of the policy reads: "A member not receiving his or her notice before the tenth of the assessment month should write on a postal card, inquiring why, &c.'' It was proved that no first assessment had been levied during the life of Mason, and that the failure to make the levy was an oversight. Now, it is apparent from these provisions of the policy that assessments were leviable every two months, and that September was one of the months when an assessment ought to have been levied. It was consequently the duty of the company to have made the levy and to have sent out the notice before the *tenth* of that month. Mason died on the twenty-eighth of September. It was, therefore, not only possible that in the regular course of business an assessment could have been levied during the life of Mason, but, under the terms of the policy, it was the plain duty of the company to have made such a levy at least eighteen days before Mason died. It failed to do so, and it cannot now rely on its own failure to defeat the policy. There was nothing in the evidence to warrant the jury in finding that the company could not have made the assessment, and, as the prayer submitted to them the finding of that fact, it was clearly erroneous.

The appellant specially excepted to the prayers of the appellees "because, by the undisputed proof, only one plaintiff claims to have an existing demand, the other having assigned his claim.'' The assignment of the policy was made by Mason to the appellees on August 9th, 1886, and the company was duly notified. The record states: "It was also proved that the plaintiff Sultan had assigned his claim in the suit prior to the trial.'' Nothing further is disclosed on this subject. It does not appear whether Sultan made a formal written assignment or not; whether he made it before or after suit, or whether it was absolute or conditional. Without more,

the Court below was asked to reject the plaintiffs' prayers. But until it affirmatively appeared that Sultan had no longer any right to prosecute the suit, the objection to the prayers was untenable.

Because of the error committed in granting the fourth instruction the judgment must be reversed, and a new trial will be awarded.

> *Judgment reversed, with costs,*
> *and new trial awarded.*

(Decided 17th November, 1892.)