Jerry SHEPARD, Plaintiff,

v.

**KEYSTONE INSURANCE COMPANY, Defendant.**

**Civ. A. No. HAR–89–3379.**

United States District Court, D. Maryland.

July 31, 1990.

William N. Butler, Howard, Butler & Melfa, Towson, Md., for plaintiff.

Edson A. Bostic, Cozen and O'Conner, Philadelphia, Pa., and Donald Arnold, Bel Air, Md., for defendant.

## MEMORANDUM OPINION

HARGROVE, District Judge.

Presently before this court is Defendant Keystone Insurance Company's Motion for Summary Judgment. A response and reply have been filed. The issues have been fully briefed. No hearing is deemed necessary. Local Rule 105.6. (D. Md.).

### · FACTS

This action arises out of an insurance coverage dispute. Plaintiff Jerry Shepard ("Shepard") seeks compensation under an insurance contract, issued by Defendant Keystone Insurance Company ("Keystone") for losses sustained in a fire at property located at 316 Philadelphia Road, Joppa, Maryland. The contract, Policy No. 41209220, is a homeowner's policy which provides coverage for damages, including loss from fire, to the "resident premises" and to the personal property of the insured.

The property was previously owned by Shepard's mother, Inez Shepard. By 1985, Inez Shepard could not keep up the mortgage payments. Title was transferred to her son so that he could assume payments to avoid foreclosure. Shepard himself had not lived on the property since 1980. At approximately the same time Shepard assumed the title, his mother moved out, leaving the house vacant. On October 9, 1986, Shepard obtained the insurance policy in dispute. The premises burned down on May 13, 1987.

When Shepard attempted to recover for the losses caused by the fire, Keystone refused to pay, alleging that since the house had not been occupied by Shepard for seventeen years, or by anyone for two years, it was not a "residence premises." Since the contents of the house had belonged to Shepard's mother rather than Shepard himself as the insured, Keystone maintains that they are not covered under the policy either. Therefore, Keystone requests that this Court grant summary judgment in its favor regarding damages to the building and to the personal property.

Summary Judgment will be granted when "there is no genuine issue as to any material fact, and if the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Courts do not "weigh the evidence and determine the truth of the matter." *Id.* at 249, 106 S.Ct. at 2510. However a mere "scintilla of evidence" is not enough to frustrate a motion for summary judgment; the pleadings must show evidence from which the finder of fact could reasonably find for the party opposing judgment. *Id.* at 252, 106 S.Ct. at 2512. "There can be no genuine issue of material fact when a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Shepard is a Maryland resident. Keystone is a Pennsylvania corporation with its headquarters and principal place of business in Philadelphia, Pennsylvania. Jurisdiction with this court is based upon diversity of citizenship. 28 U.S.C. § 1332. Accordingly the Court will apply Maryland substantive law.

### I.

When interpreting insurance contracts, Maryland law requires that words be given their customary and normal meaning. *C. & H. Plumbing and Heating, Inc. v. Employees Mutual Casualty Co.*, 264 Md. 510, 511, 287 A.2d 238 (1972); *Government Employees Insurance Co. v. DeJames*, 256 Md. 717, 720, 261 A.2d 747 (1970). However where the terms are ambiguous, they are to be construed most favorably to the insured. *American Automobile Insurance Co. v. Master Building Supply and Lumber Co.*, 179 F.Supp. 699, 704 (D.Md.1959) (applying Maryland law).

There is no ambiguity as to the meaning of the terms "residence" or "reside" in the insurance contract between Shepard and Keystone. The definitions and terms of coverage are set out simply on the first two pages. The terms "residence" and

"reside," as employed throughout the policy, clearly refer to a place that is occupied by the insured as a dwelling place or home, at least on a temporary basis.

The insurance application, signed by Shepard, describes the property as a private home. The policy is called a homeowner's policy, and this title is stated clearly on the cover. *See* Defendant's Exhibit E. The first page of the policy states that the insured location means a "residence premises" which is the part of the premises structures "used by you as a residence." *Id.* at 1. Provisions describing the insured location indicate that, if there are structures on the property, these should be owned and used by the insured for present or future occupancy, either on a temporary or permanent basis. *Id.*

"Residence premises" is later defined as a "one or two family dwelling and grounds, or that part of any other building where you reside and which is shown as the residence premises" in the declaration. *Id.* at 2. The declaration indicates that 316 Philadelphia Road, Joppa, is the "residence premises" being insured. Thus, the contract specifically requires that this property be a dwelling in which the insured is living.

Further, the policy only states that it covers "dwellings used principally as private residences," and "other structures on the residence premises separated from the dwelling by a clear space." Noticeably excluded are dwellings used for purposes other than private residences, i.e., dwellings not used for habitation by the insured. Accordingly, it is clear on the face of the policy that the property covered must be a place currently occupied by the insured as his home.

Courts construing Maryland law have found the meaning of the terms "residence" and "reside" to be consistent with the definitions afforded them by Shepard's insurance policy with Keystone. This Court, in distinguishing between "residence" and "domicile," has determined that residence requires "bodily presence as an inhabitant of a given place." *T.P. Laboratories, Inc. v. Huge*, 197 F.Supp. 860, 863 (D.Md.1961). In election cases, Maryland courts have also held "residence" to be the place of actual physical presence or abode. *See Dorf v. Skolnik*, 280 Md. 101, 371 A.2d 1094 (1977); *Bainum v. Kalen*, 272 Md. 490, 495, 325 A.2d 392 (1974). Furthermore, in provisions setting forth qualifications for political office, Article III, Section 9 of the Maryland Constitution employs the term "reside" to indicate the present address of the candidate.

It is also evident that Shepard himself understood and accepted the usage of "reside" and "residence" as used in the policy. In a thirty-five minute taped interview between Shepard and investigators employed by Keystone, the terms were used on fourteen separate occasions by the investigators in their attempt to determine whether Shepard's use of the property met the requirements of his policy. *See* Defendant's Exhibit H. At no time did Shepard dispute the use of the terms or request clarification as to their meaning. On the contrary, his statements clearly demonstrate that he understood "reside" to mean the place where he lives, as it is defined in the policy. *Id.*

In his answers to the questions posed by Keystone's investigators, Shepard contends that his residence has been 3214 Philadelphia Road for the last four years. *Id.* at 1. He had resided at the insured property when his parents purchased it in 1955; but after acquiring title he only "resided there in spurts, when visiting his mother." *Id.* at 3. No one was residing in the house at the time of the fire. *Id.* Shepard admits that he never intended to use the property as a residence. *Id.* at 14. He states that he assumed the mortgage simply to relieve his mother of the burden and to keep the property in the family. *Id.* at 5. The telephones were disconnected. He did not even possess keys to the house. *Id.* at 6, 9. It is obvious that the house was vacant at the time of the fire.

Shepard cites *Cal–Farm Insurance Co. v. Boisseranc*, 151 Cal.App.2d 775, 312 P.2d 401 (1957), to support his statement that the meaning of "residence" varies according to the circumstances of the case. The issue before the *Cal–Farm* court was

whether a child of divorced parents was a resident of his father's household for the time necessary to qualify for insurance. *Id.* 312 P.2d at 402. The important element was the time period necessary to constitute residency, rather than the concept of living on the premises. *Id.* 312 P.2d at 406. There was never any doubt that "resident" meant "lived within the household." Thus, the issue in *Cal–Farm* is not relevant to this Court's consideration of the motion for summary judgment.

 It is the obligation of the insured to read and understand the terms of his insurance policy, unless the policy is so constructed that a reasonable man would not attempt to read it. *Croteau v. John Hancock Insurance Co.*, 123 N.H. 317, 461 A.2d 111 (1983). If the terms of the policy are inconsistent with his desires, he is required to notify the insurer of the inconsistency and of his refusal to accept the condition. *Martinez v. John Hancock Insurance Co.*, 145 N.J.Super. 301, 367 A.2d 904 (1976). *See also Monumental Life Insurance Co. v. Taylor*, 212 Md. 202, 213–214, 129 A.2d 103 (1957); *Commercial Casualty Co. v. Schmidt*, 166 Md. 562, 570, 171 A. 725 (1934); *Eagle, Star and British Dominions Insurance Co. v. Main*, 140 Md. 220, 224, 117 A. 571 (1922). Shepard never expressed disatisfaction with any of the terms in the policy.

The terms of the insurance policy between Shepard and Keystone were clear on the face of the contract. Shepard obviously understood their meaning. It was his responsibility to read his policy carefully. As the insured, Shepard was required to live on the residence premises. He did not do so. Therefore, under the terms of the policy and under Maryland law, the premises destroyed by fire was not covered by the insurance contract.

## II.

 Shepard contends that Keystone should be liable under the contract for the damages caused by the fire, because it accepted payments on the policy from him in spite of the fact that it knew or should have known that no one was living in the building at the time the policy was enacted. He further contends that, by accepting payments, Keystone misled him into believing that his policy was valid. Based on this alleged deception, Shepard maintains, Keystone should be estopped from denying him coverage.

Shepard cites two cases to support his argument that Keystone, by its knowledge of his situation, forfeited its right to rescind the policy. The first involves alleged medical malpractice in a situation in which the insurance company disclaimed coverage when an insured doctor failed to cooperate in the litigation being carried out in his behalf. *Medical Mutual Liability Insurance Co. v. Miller*, 52 Md.App. 602, 451 A.2d 930 (1982). The *Miller* court found that, since the insurance company had waited an inordinate amount of time (eleven months) to deny coverage under the breach of cooperation clause, it was estopped from disclaiming liability. *Id.* 52 Md.App. at 611, 451 A.2d 930. The insurance company was not asked to cover a contingency not included in the policy; it was required to defend the insured as the policy demanded, because it waited too long to legitimately deny coverage when the insured breached. *Id.* There was no conflict concerning the provisions of the policy itself, as there is in the case at bar. This Court therefore finds *Miller* to be inapplicable.

*Globe Reserve Mutual Life Insurance Co. v. Duffy*, 76 Md. 293, 25 A. 227 (1892), deals with misrepresentation regarding the health of the insured, an "ignorant colored man" who died soon after purchasing a life insurance policy. The *Duffy* court did state that an insurer can be held to a contract where it has accepted premiums with knowledge of facts that are incorrect, as long as the insured was not involved in the mistake or falsehood. *Id.* 76 Md. at 301, 25 A. 227. The court also held, however, that when an insured has "means at hand to discover the falsehood and negligently omits to use them he will be regarded as an instrument in the fraud and no recovery will be allowed." *Id.* at 300–301, 25 A. 227. Thus, the question in *Globe* was whether the insured had the means of

knowing that false answers had been supplied to questions on the policy regarding his health. *Id.* at 301–302, 25 A. 227. If the insured had any means of knowing that the facts as written by the agent were incorrect, there would be no opportunity for recovery under his policy. *Id.* at 301, 25 A. 227. Applying the rule of *Duffy* to the case at bar, if Shepard had any reason to know that the policy required him to live at the insured premises, he also would lose any opportunity to recover. Reading the first two pages of his policy should have alerted Shepard to the residence requirement. It has, in fact, been demonstrated that Shepard did understand that he was required to live on the premises. *See supra* at 432.

In arguing that Keystone should be estopped to deny coverage, Shepard claims that he was misled by Keystone or its agent. His reliance on this alleged misrepresentation caused him to change his position for the worse, by paying the premium and not seeking alternate insurance coverage. Where reliance has justifiably occurred, "the right of an insurer to void the policy may be lost by the doctrine of waiver or estoppel." *Rubinstein v. Jefferson National Life Ins. Co.*, 268 Md. 388, 392, 302 A.2d 49 (1973).

The Court does not find this argument compelling. The importance of the insured's responsibility to know the parameters of his policy has consistently been upheld in Maryland. Even where there has been a material misrepresentation by an agent without the initial knowledge of the insured, if the insured "has the means to ascertain that the application contains false statements, he is charged with the misrepresentations just as if he had actual knowledge of them and was a participant there-

in." *Parker v. Prudential Insurance Co. of America*, 900 F.2d 772, 778 n. 7 (4th Cir.1990), *quoting Serdenes v. Aetna Life Insurance Co.*, 21 Md.App. 453, 461, 319 A.2d 858 (1974). Shepard had reason to know that he was required to live on the property which the policy purported to cover. *See supra* at 432.

Furthermore, under Maryland law, waiver and estoppel cannot be used to create liability where none previously existed, or to extend coverage beyond what was originally intended. *American Automobile Insurance Co. v. Master Building Supply and Lumber Co.*, 179 F.Supp. 699, 704–705 (D.Md.1959), *Prudential Insurance Co. of America v. Brookman*, 167 Md. 616, 620, 175 A. 838 (1934). This comports with the majority of jurisdictions, which have also held that estoppel is not available to broaden such coverage to previously uninsured situations. *See, e.g., Harr v. Allstate Insurance Co.*, 54 N.J. 287, 255 A.2d 208, 219 (1969); *Balehi Marine, Inc. v. Fireman's Insurance Co.*, 460 So.2d 16 (La.App.1984), *cert. denied*, 462 So.2d 654 (La.1985); *Twin City Hide v. Transamerica Insurance Co.*, 358 N.W.2d 90 (Minn.App.1984). *See also* Annot., 1 A.L.R.3d 1139.

Shepard's policy with Keystone clearly limits coverage to the residence premises. To require Keystone to provide coverage for property not used as residence premises would constitute an extension of liability where none previously existed. This situation indicates the need for a new contract, and, in Maryland, is not susceptible to estoppel. *American Automobile*, 179 F.Supp. at 705.[1]

### CONCLUSION

The terms of Shepard's insurance policy with Keystone are clear in their require-

---

1. Shepard also maintains that there is a question of material fact concerning ownership of the personal property which was destroyed. According to Shepard's testimony, the majority of the property belonged to his mother. *See* Defendant's Exhibit B, Deposition of Jerry Shepard at 88–138.

He contends that his mother's property should be covered by the policy. Section 1.C. of the policy, however, states that personal property of the insured is covered and that, at the request of the insured, the company will extend coverage to "personal property of others while the property is on the part of the residence premises occupied by the insured." There is no evidence that Shepard requested Keystone to insure this property. Even if he had made such a request, the personal property would not have been eligible for coverage, because it was not located in residence premises occupied by the insured, as required by the policy.

ment that the insured reside on the premises. There is no ambiguity as to the meaning of the terms "reside" or "residence" as used in the policy. They indicate a place currently lived in by the insured as a home. Evidence attests to the fact that Shepard understood the terms according to their accepted usage. The property at 316 Philadelphia Road was not the "residence premises" of the insured. Consequently the property was not covered within the terms provided by the policy.

To require Keystone to safeguard against loss to property not insured under the policy would necessitate creation of coverage where none previously existed. The doctrine of estoppel is not available to broaden coverage to protect against risks not contained in the original agreement. Thus, Shepard cannot use estoppel to force Keystone to accept liability for the damage to his property caused by the fire. Accordingly, Defendant's motion for summary judgment is granted. It will be so ordered.