**FBS MORTGAGE CORPORATION,
Plaintiff,**

v.

**STATE FARM FIRE AND CASUALTY
COMPANY OF BLOOMINGTON,
ILLINOIS, Defendant.**

**No. 92 C 1390.**

United States District Court,
N.D. Illinois, E.D.

Sept. 16, 1993.

---

Merle L. Royce, II and Marshall J. Burt, Law Offices of Merle L. Royce, Chicago, IL, for plaintiff.

Harry Baldavf Rosenberg, Jr. and Frederick John Sudekum, III, Sudekum, Rosenberg & Cassidy, Chtd., Chicago, IL, for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

On February 25, 1992, Plaintiff FBS Mortgage Corporation ("FBS") filed a two-count complaint seeking a declaration of its rights under a Homeowner's Insurance Policy ("Homeowner's Policy") issued by Defendant State Farm General Insurance Company ("State Farm").[1] State Farm contends that FBS is not entitled to coverage under the terms of the Homeowner's Policy. The parties have filed cross motions for summary judgment and, for the reasons explained below, summary judgment is granted in favor of FBS.

## BACKGROUND

The undisputed facts are as follows.[2] In May, 1988, Julio R. Rodriguez ("Rodriguez") and Maria Andrade ("Andrade") acquired 3729 West Palmer, Chicago, Illinois (the "Insured Premises") through a mortgage loan obtained from Centrust Mortgage Corporation ("Centrust"). The mortgage was assigned to FBS on December 1, 1988. On or about May 24, 1988, State Farm issued the Homeowner's Policy which included fire insurance for the Insured Premises. The Homeowner's Policy identified Andrade and Rodriguez as the "Named Insured" and the coverage limitation for the dwelling was $71,-000.

Rodriguez and Andrade moved into the Insured Premises about a month after they purchased it. The Insured Premises was a two story dwelling house with separate living facilities on each floor. Rodriguez and Andrade lived together on the second floor of the Insured Premises until Andrade left Rodriguez and moved out on February 10, 1990. After Andrade moved away from the Insured Premises, she returned only to visit. On February 12, 1990, Andrade executed a quit claim deed, transferring her entire interest in the Insured Premises to Rodriguez.

On April 10, 1990, Rodriguez was arrested and subsequently incarcerated in the Cook

1. Although the Complaint names "State Farm Fire and Casualty Company of Bloomington, Illinois" as Defendant, "State Farm General Insurance Company" has appeared as the Defendant and the parties agree that it is the proper Defendant. (Jt.Stip., I.1).

2. The parties submitted a "Joint Stipulation of Uncontested Facts and Statement of the Parties' Contentions in Support of Their Respective Motions for Summary Judgment" in lieu of separate 12(m) and 12(n) statements under the Local Rules of the United States District Court for the Northern District of Illinois. The abbreviation, "Jt.Stip." refers to this submission, which was filed with this court on November 25, 1992. Although the parties differ as to the relevancy and materiality of certain facts, the Joint Stipulation details the use and occupancy of the Insured Premises. This court understands all facts alleged in the Joint Stipulation to be admissions, regardless of any challenges on evidentiary grounds.

County Jail, where he was set to remain until January, 1991. On April 17, 1990, Rodriguez executed a notarized, handwritten instrument which he delivered to Carmen Cabrera ("Cabrera"), leaving her in charge of maintaining the Insured Premises while he was in jail. (Jt.Stip, I.16). Cabrera moved into the second floor of the Insured Premises on May 12, 1990.

After February, 1990, Andrade and Rodriguez's mortgage payments were in arrears. On May 29, 1990, Cabrera telephoned FBS about delinquency notices that FBS had sent. She advised an FBS loan counselor that Rodriguez was in jail where he might remain for another two months. She informed that counselor that Rodriguez and Andrade were separated or divorced and she had "no idea" of Andrade's whereabouts. Cabrera stated that she was a tenant at the Insured Premises and had a letter from Rodriguez's attorney "telling her" she was in charge of that property.

On August 17, 1990, the Spanish Coalition for Housing in Chicago contacted FBS and informed them that Rodriguez and Andrade were divorced, that Andrade had deeded the Insured Premises to Rodriguez in February, 1990, and that Rodriguez had been in jail since April, 1990, and was awaiting sentencing. FBS was also informed that Cabrera had moved into the Insured Premises but was having problems collecting from the tenant who occupied the first floor. A mortgage payment plan with Cabrera was agreed upon, but no payments were made.

Throughout 1990, FBS gathered information on the Insured Premises and attempted to contact Andrade and/or Rodriguez in an effort to obtain payments. On April 30, 1990, FBS ordered an independent company, Mortgage Maintenance, Inc. ("MMI"), to conduct a property inspection at the Insured Premises and report back to FBS on its condition. In May and June of 1990, FBS received reports from MMI indicating that no contact was made with any occupant of the Insured Premises and that MMI was unable to verify the identity of the occupant. Difficulties with identifying the occupant and contacting Andrade and/or Rodriguez continued throughout the summer of 1990. On or

about July 17, 1990, FBS received a report on the Insured Premises from MMI which identified Andrade as the "Person Interviewed" but indicated she had "no phone." The "occupancy status" was reported as "occupied" by the "owner." No entry was made for occupancy by a "Tenant."

After failing to receive any mortgage payments on the property, FBS brought a foreclosure action in the Circuit Court of Cook County and had summonses issued against Rodriguez and Andrade. The Sheriff's Office returned both summonses "not found." These returns disclosed that in both of the attempted services, the Sheriff's Office contacted Cabrera at the Insured Premises, who informed the deputy that Rodriguez was incarcerated and that Andrade had moved. During the remainder of 1990, FBS received three reports from MMI which indicated that the Insured Premises was "occupied" by the owner and/or the tenant. FBS never did establish contact with Andrade or Rodriguez, but mailed various letters to the Insured Premises which did not yield responses.

Cabrera left the Insured Premises on December 15, 1990 and moved into another apartment. Rodriguez put a man in charge of the Insured Premises, the locks were changed and Cabrera had to make arrangements with the man to remove her belongings. On December 30, 1990, while the Homeowner's Policy was in full force and effect, the Insured Premises was completely destroyed by fire. Neither Rodriguez nor Andrade submitted a claim to State Farm because of the fire loss. On or about April 22, 1991, FBS learned that the Insured Premises had been destroyed and, on or about May 29, 1991, reported the loss to State Farm which undertook to inspect the Insured Premises. FBS subsequently submitted a Proof of Loss to State Farm.

In a letter dated November 25, 1991, State Farm rejected FBS's claim under the Homeowner's Policy and denied any liability, including liability for repair and demolition expenses, on the grounds that FBS had failed to comply with the Mortgage Clause of the Homeowner's Policy.

FBS received a $59,209.86 judgment in the foreclosure action against Rodriguez and Andrade on May 20, 1991. At the time of this judgment, the principal balance on the loan was $48,878.83. In August, 1991, FBS was served with a complaint in an action instituted by the City of Chicago in the Circuit Court of Cook County, Illinois, alleging that the Insured Premises was an immediate danger to the public and seeking, *inter alia,* its repair and demolition. State Farm's estimated costs of demolition and debris removal for the Insured Premises was $10,860. The Insured Premises was sold in its damaged and destroyed condition at a foreclosure sale on December 19, 1991. FBS was the successful bidder at a purchase price of $7,500.

On February 25, 1992, FBS filed a complaint against State Farm seeking indemnification from the fire loss, the deficiency in the mortgage with interest from the date of denial of its claim, costs of the demolition and removal of debris from the Insured Premises, costs, expenses and attorneys fees. State Farm contends that FBS is not covered under the Homeowner's Policy. Both parties moved for summary judgment.

### DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure requires this court to enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Accordingly, the court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The court must view the record and draw all inferences from it in the light most favorable to the non-moving party. *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990).

Actions involving the interpretation and construction of insurance policies present issues of law and are, therefore, particularly appropriate for summary judgment. *John Deere Ins. Co. v. Shamrock Industries, Inc.,* 929 F.2d 413, 417 (8th Cir.1991). In this regard, the Seventh Circuit has held:

> In a lawsuit by an insured against its insurer following the insurer's refusal to defend its insured, a court must decide whether the insurer's initial refusal to defend breached the insurance contract. A court's primary concern in interpreting an insurance policy is to effectuate the intent of the parties as expressed in the insurance contract. If the particular policy language at issue in a case is unambiguous, the court will give effect to the plain, ordinary, and popular meaning of the language. However, if the policy language is ambiguous, a court will construe such ambiguity in favor of the insured since the insurer drafted the policy.

*Playboy Enterprises, Inc. v. St. Paul Fire & Marine Ins. Co.,* 769 F.2d 425, 427–28 (7th Cir.1985) (citations deleted).

In the case at bar, State Farm asserts that FBS is not entitled to coverage under the Mortgage Clause of the Homeowner's Policy. Specifically, State Farm argues that FBS was aware, but failed to notify State Farm, of the "change in occupancy" which occurred during the incarceration of Rodriguez. The Mortgage Clause provides in relevant part as follows:

> a. If a mortgagee is named in this policy, any loss payable under Coverage A [dwelling insurance] shall be paid to the mortgagee and you,[3] as interests appear ...
>
> b. *If we deny your claim,* that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:
>
> (1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware ...

---

**3.** The Homeowner's Policy provides that "You" and "Your" mean the "named insured" shown in the Declarations (i.e. Rodriguez and Andrade).

"We," "us" and "our" mean the company shown in the Declarations (i.e. State Farm). (Homeowner's Policy, Def.).

(Homeowner's Policy, I., Cond. ¶ 12) (emphasis added).

Because neither of the Andrade nor Rodriguez made claims against the Homeowner's Policy, their claims were never actually denied. Nevertheless, FBS concedes that the duty to notify under the Mortgage Clause arises if the Named Insured's Claim is *subject* to denial. In addition, State Farm accepts FBS's contention that:

> as a matter of construction, any notice required under the mortgage clause of the policy *would have to relate to the sort of change in occupancy that would preclude recovery by the named insured.*

(Def. Memorandum in Opp. to Pl. Motion for S.J., 13) (emphasis added).

In this case, State Farm fails to show that the "change in occupancy" from Rodriguez to Cabrera was a proper basis for the claim of the Named Insured to be subject to denial under the Homeowner's Policy. Accordingly, FBS had no duty to notify State Farm of a "change in occupancy" under the Mortgage Clause.

State Farm's first claims that there was a change in occupancy making the claim of the Named Insured subject to denial because the Insured Premises did not qualify as the "residence premises" covered under the Homeowner's Policy. The Homeowner's Policy provides:

COVERAGE A—DWELLING
1. We Cover:
a. the dwelling used principally as a private residence on the *residence premises* shown in the Declarations. This includes structures attached to the dwelling.

\* \* \* \* \* \*

10. "residence premises" means the one, two, three or four-family dwelling, other structures, and grounds or that part of any other building where *you reside* and which is shown in the Declarations.

(Homeowner's Policy, I. Cov. ¶ 1 and Def. ¶ 10) (emphasis added). The parties agree that the Insured Premises was the property described in the Declarations. State Farm's argument is that the Insured Premises did not constitute the "residence premises" because neither Rodriguez nor Andrade "resided" there during the eight month period before the fire.

State Farm's argument fails because the term "residence premises" is ambiguous with respect to whether Rodriguez's claim may be denied under the Homeowner's Policy.[4] Furthermore, State Farm's interpretation of the term, "residence premises," is unenforceable because it compromises the Standard Fire Insurance Policy of the State of Illinois.

Under Illinois contract law, construing the terms of a contract is a two-step process:

> First, it is necessary to look to the plain language of the provision at issue. Reviewing Illinois law, this Court has noted that '[t]he starting point must be the contract itself. If the language of the contract unambiguously provides an answer to the question at hand, the inquiry is over.' *La Salle Nat'l Bank v. Service Merchandise Co.*, 827 F.2d 74, 78 (7th Cir.1987). If the plain language of the contract is ambiguous, then 'the court must go on to declare [the contract's] meaning.' *Id.* If the court finds that a contract is ambiguous and that extrinsic evidence is undisputed, then the interpretation of the contract remains a question of law for the court to decide. *City of Clinton v. Moffitt*, 812 F.2d 341, 344 (7th Cir.1987). However, if the parties dispute the extrinsic evidence on an ambiguous contract, then a fact-finder must be called upon to determine the intent of the parties.

*Selim M. Senkan Ph.D. v. Ill. Inst. of Tech.*, No. 92 C 3238, 1993 WL 98225 (N.D.Ill.1993) (Duff, J.), *quoting, Lumpkin v. Envirodyne Industries, Inc.*, 933 F.2d 449, 456 (7th Cir. 1991). "A provision is ambiguous if it is subject to more than one reasonable interpretation." *State Farm Fire & Casualty Co. v. Moore*, 103 Ill.App.3d 250, 256, 58 Ill.Dec.

---

4. The undisputed facts indicate that the Insured Premises may not be considered the "residence premises" with respect to Andrade because she moved out of the Insured Premises and transferred her ownership by quit claim deed to Rodriguez. Accordingly, any valid claim under the Homeowner's Policy by the "Named Insured" refers to a claim made by Rodriguez.

609, 430 N.E.2d 641 (2nd Dist.1981). With respect to insurance contracts, the determination of ambiguity favors the insured. Illinois Courts have held:

> In determining if an ambiguity exists, the court should consider the subject matter of the contract, the facts surrounding its execution, the situations of the parties, and the predominate purpose of the contract which is to indemnify the insured.

*Id.*

The definition of "residence premises" is ambiguous as to whether Rodriguez would have been entitled to coverage under the Homeowner's Policy at the time of the fire. This is because within that definition, the phrase, "where you reside," does not unambiguously require continuous physical presence or forbid temporary absences by the Named Insured. Illinois courts have held that the word, "resides" necessitates some degree of physical presence. When construed under Illinois law, however, the word "residence premises" is ambiguous because it fails to establish when and for how long the named insured must be physically present at the Insured Premises in order to "reside" there. Accordingly, the definition of "residence premises" does not address whether an involuntary, eight-month absence from the Insured Premises, such as that in the case at bar, is grounds for denying coverage.

Illinois cases use the word "resides" in connection with the concepts of "resident," "residence," or "technical legal residence." State Farm asserts that coverage should be denied because the word "resides" unambiguously requires physical presence and should not be confused with the concept of "resident" or "technical legal residence." Nevertheless, these cases provide at least a starting point for interpreting the word, "resides."

■ Under Illinois law, a person can "reside" in a given location without continuous physical presence. For instance, one court has held that "more than momentary" visits with a divorced parent are enough to fulfill the element of physical presence necessary to show that one is a resident. *Coriasco v. Hutchcraft*, 245 Ill.App.3d 969, 185 Ill.Dec. 769, 615 N.E.2d 64 (5th Dist.1993). In that case, a child was held to be a "resident" of

her father's household when she visited only on weekends and occasionally during the week. *Id.* at 972, 185 Ill.Dec. 769, 615 N.E.2d 64. In this regard, another court has explained:

> In Illinois, cases construing the term "resident" have stated that the meaning varies with the content and the subject matter of the case, but that it is generally understood to include intent and permanency of abode in addition to mere physical presence. The intent of the party whose residence is in question is the controlling factor. Intent is gathered primarily from the acts of a person ... Once a residence is established, it is presumed to continue, and the burden of proof in such cases rests on the party who attempts to establish that a change in residence occurred. To establish a new residence, the person must physically move to a new home and live there with the intention of making it his permanent home, and only when an abandonment has been proved does the person lose residence.

*Webb v. Morgan*, 176 Ill.App.3d 378, 386, 125 Ill.Dec. 857, 531 N.E.2d 36 (5th Dist.1988) (citations deleted). The *Webb* court found that a number of factors in addition to physical presence in a given location could be considered to determine where a person "resides" as a resident. *Id.* at 388, 125 Ill.Dec. 857, 531 N.E.2d 36.

Furthermore, another Illinois case suggests that the use of the word "resides" fails to address whether a Named Insured's temporary absence brings a given location outside the scope of the definition of "residence premises." For instance, *Bastian v. Personnel Board of Chicago*, 108 Ill.App.3d 672, 64 Ill.Dec. 213, 439 N.E.2d 142 (1st Dist.1982) discussed the term "resides" in connection with the concept of "residence." That court agreed that the word "reside" is synonymous with "live, dwell, abide, stay, or lodge." *Id.* at 677, 64 Ill.Dec. 213, 439 N.E.2d 142. Yet, the *Bastian* court found that a person may have a number of residences. *Id.* at 678, 64 Ill.Dec. 213, 439 N.E.2d 142.

In the case at bar, the undisputed facts indicate that Rodriguez's absence was noth-

ing other than a temporary one. While he was incarcerated, Rodriguez placed Cabrera in charge of the Insured Premises, where she lived until December 15, 1990. At that time, Rodriguez put a man in charge of the Insured Premises, who changed the locks and from whom Cabrera had to reclaim her belongings. It is difficult to conceive of any other steps that Rodriguez might have taken to maintain a physical stake in the Insured Premises during his incarceration. Thus, Rodriguez's actions are totally inconsistent with State Farm's notion that the Insured Premises was no longer a place where he "resided."

If State Farm intended to exclude locations from coverage in situations such as this case, such a provision must have been clearly drafted into the Homeowner's Policy:

> [T]he insurer, as the drafter of the policy, could have stated exclusions clearly and specifically ... Exclusionary provisions ... are applied only where the terms are clear, definite and explicit.

*State Farm Fire & Casualty Co.*, 103 Ill. App.3d at 256, 58 Ill.Dec. 609, 430 N.E.2d 641 (citations deleted). Indeed, it has been clearly established under Illinois law that:

> [W]hen an insurer attempts to limit liability by excluding coverage under certain circumstances, it has the burden of showing that the claim falls within the exclusionary language on which it relies.

*Int'l Surplus Lines Ins. v. Pioneer Life Ins.*, 209 Ill.App.3d 144, 148, 154 Ill.Dec. 9, 568 N.E.2d 9 (1st Dist.1990).

■ State Farm explains that the word "reside" should not be confused with the concept of "technical legal residence" which does not require continuous inhabitation. Nevertheless, the use of the word, "reside," in connection with the word, "residence," also suggests that a reasonable interpretation of "residence premises" would be one's permanent, legal residence. An inmate's technical legal residence does not necessarily change during the period of incarceration. This is because one's imprisonment does not indicate an intent to change his residence. *Sullivan v. Freeman*, 944 F.2d 334, 337 (7th Cir.1991). The 7th Circuit has explained:

> [S]ince domicile is a voluntary status, a forcible change in a person's state of residence does not alter his domicile; hence the domicile of the prisoner before he was imprisoned is presumed to remain his domicile while he is in prison.

*Id.*

Cases cited by State Farm in support of its argument that the definition of "residence premises" precludes coverage by the Named Insured are both irrelevant and distinguishable from this case. For example, State Farm cites *People v. Carman*, 385 Ill. 23, 52 N.E.2d 197 (1943), for the proposition that an inmate does not "reside" at a given location when he is incarcerated somewhere else. In fact, that case held that, for the purpose of tolling a statute of limitations, a person is not *"publicly* and *usually* resident" in Illinois during the time that he is imprisoned in another state. *Id.* 52 N.E.2d at 198. In the case at bar, the Homeowner's Policy, unlike the statute of limitations, did not require the Named Insured to "usually and publicly" reside at the Premises during any specified time period.

State Farm also notes that in *Shepard v. Keystone Ins. Co.*, 743 F.Supp. 429 (D.Md. 1990), the court ruled that "there is no ambiguity as to the meaning of the terms 'residence' or 'reside' in the insurance contract [between the parties]." *Id.* at 430. That court held that the term "residence premises" requires that "the property covered must be a place currently occupied by the insured as his home." *Id.* at 431. In *Shepard,* however, the court noted that the insured had clearly abandoned the insured property as his home. *Id.* Similarly, another court held that a plaintiff does not reside at the "residence premises" when:

> [t]he evidence in the record showed that [the Plaintiff] had not lived in the [insured house] since 1984, he only visited the house occasionally, the house was in an *obvious* state of disrepair, and the water and telephone service had been disconnected.

*Nancarrow v. Aetna Cas. & Sur. Co.*, 932 F.2d 742, 744 (8th Cir.1991).

Finally, State Farm cites *Epps v. Nicholson*, 187 Ga.App. 246, 370 S.E.2d 13 (Ga.App. 1988) in support of the argument that Cabre-

ra's occupation of the Insured Premises as a tenant precluded that location from constituting the "residence premises."[5] In *Epps*, the Plaintiff mistakenly attempted to insure a rental property with a policy that covered only owner-occupied dwellings. In that case, it was clear that the Plaintiff's usual home was at a different location than the rental property for which coverage was denied. *Id.* In contrast, in the case at bar, Rodriguez lived at the Insured Premises and he directed Cabrera to maintain his home for him during his absence.[6]

The definition of "residence premise" is ambiguous as to whether Rodriguez, and therefore FBS, is entitled to coverage under the Homeowner's Policy. Hence, the term must be construed in favor of the insured, and State Farm may not deny coverage based upon that definition.

 Alternatively, State Farm's construction of the definition of "residence premises" is unenforceable because it is inconsistent with the Standard Fire Policy of the State of Illinois. Pursuant to Section 397 of the Illinois Insurance Code, 215 ILCS 5/397, the Director of Insurance has promulgated certain Regulations which provide for a uniform policy ("Standard Policy") for all fire insurance contracts. 215 ILCS 5/397 (Smith-Hurd 1993). Under the regulations, all fire insurance policies must "conform ... or, if another form is used, shall for purposes of concurrence of contract be *deemed* to be the Standard Policy." 50 Ill.Admin.Code tit. 50 § 2301.30 (emphasis added). In essence, the Standard Policy sets forth the minimum coverage upon which an insured can rely under any fire insurance policy issued in Illinois. 215 ILCS 5/397.

The Standard Policy sets forth a limited number of exclusions for restricting coverage. The only exclusion involving occupancy provides that an insurance company will not be liable for losses occurring when "a described building, whether intended for occupancy by owner or tenant, is vacant or unoccupied beyond a period of sixty consecutive days." (Standard Policy, lines 28–35). Illinois courts have construed "vacant or unoccupied" to mean "that [a] dwelling was without an occupant at the time of the loss, that is, that no person was living in it." *Cavin v. Charter Oak Fire Ins. Co.*, 66 Ill.App.3d 808, 810, 23 Ill.Dec. 647, 384 N.E.2d 441 (2nd Dist.1978); *see also, Kolivera v. Hartford Fire Ins. Co.*, 8 Ill.App.3d 356, 359, 290 N.E.2d 356 (1st Dist.1972). Accordingly, the Standard Policy's exclusion is inapplicable in this case because Cabrera lived at the Insured Premises until December 15, 1990—15 days before the fire.

State Farm's proposed interpretation of the Homeowner's Policy denies coverage in the absence of continuous, physical inhabitation of the Insured Premises by the Named Insured at the time of loss. Hence, State Farm broadens the Standard Policy's exclusions by requiring physical occupation of the Insured Premises for a period of *less* than 60 days before the loss. In doing so, State Farm unlawfully compromises the Standard Policy by diminishing the coverage it provides to achieve uniformity and concurrence of contract.

 Nevertheless, State Farm argues that this court should not construe the policy at issue with the Standard Policy because the Standard Policy was neither referenced by, incorporated into, or attached to the insurance policy in effect on the date of loss. State Farm further asserts that no section of the Insurance Code or the Regulations of the Illinois Department of Insurance incorporates the Standard Policy into Illinois insurance policies such as the one in question.

---

**5.** State Farm also asserts it never insured the building as an owner-occupied dwelling and not an "investment property for the purpose of renting it to tenants." (Def. Memorandum in Support of Motion for S.J., 6, *citing*, Jt.Stip., section III, pars. 14, 16). This court finds that the provisions of Andrade and Rodriguez's Loan and Insurance Applications are not probative as to the purpose for which the building was insured because they are consistent with the lease of a portion of the owner-occupied dwelling to ten-

ants. Moreover, there is no evidence that Andrade or Rodriguez concealed their use of the dwelling, or that FBS knew of such concealment.

**6.** Although Cabrera told FBS that she was a "tenant" rather than the owner of the house, the facts reveal that her role was also analogous to the role of a house sitter in that she was maintaining the Insured Premises for Rodriguez.

These arguments lack merit because the Insurance Code encompasses rules and regulations promulgated pursuant to authority delegated by specific provisions of the Insurance Code and these regulations have the force of statute. *Margolin v. Public Mutual Fire Ins. Co.*, 4 Ill.App.3d 661, 666, 281 N.E.2d 728 (1st Dist.1972); *see also*, 50 Ill.Admin.Code § 2301.30. According to the regulations, all Illinois fire insurance policies must be consistent with the Standard Policy. *Margolin*, 4 Ill.App.3d at 667, 281 N.E.2d 728.

 State Farm also incorrectly argues that the issue of compliance with the Standard Policy is irrelevant because FBS failed to specifically allege that the Illinois Department of Insurance refused to accept or wrongfully accepted its filing. On the contrary, *Margolin* held that, by accepting an endorsement for filing that contained a cancellation notice provision which differs from that of the Standard Policy, the Director of Insurance "[does not make] that endorsement legal and binding despite its conflict with the standard form incorporated in [the regulations] of the Department of Insurance." *Id.* at 667–68, 281 N.E.2d 728. The *Margolin* court explained:

> [The] purpose [of uniform coverage] would be undermined if we were to hold that the standard form policy could be established by a process of individual exception rather than by rules and regulations of general applicability. An administrative agency may not accomplish by exception what it is empowered to accomplish only by rule or regulation.

*Id.* at 667, 281 N.E.2d 728. Accordingly, in this case, the Director of Insurance's acceptance of the Homeowner's Policy did not constitute an amendment or exception to the Standard Policy.[7]

7. State Farm also incorrectly asserts that FBS failed to allege that the Homeowner's Policy did not conform to the requirements of the Standard Policy. (*See*, Complaint, Count I).

8. State Farm argues that the phrase "otherwise provided in writing added hereto" means that the Standard Policy's occupancy clause only applies if no other provision is made. The full

 Also, contrary to State Farm's position, the fact that the Homeowner's Policy generally provides broader coverage than the Standard Policy does not mean that it may provide less coverage for fire loss. The Regulations provide that contracts or endorsements for other perils that are used in connection with the Standard Policy "may contain provisions and stipulations inconsistent with the Standard Policy *to the extent they are applicable only to such other perils.*" 50 Ill.Admin.Code § 2301.60 (emphasis added).

 Finally, State Farm incorrectly asserts that the Standard Policy serves only as "extrinsic evidence" because the terms of the Homeowner's Policy are ambiguous. As discussed above, the Standard Policy wields the force of law, and the terms of the Homeowner's Policy are *not* unambiguous.[8]

State Farm makes a second argument that FBS, as mortgagee, has a separate contractual duty to notify State Farm of any changes in occupancy *regardless* of whether the Named Insured has a valid claim under the Homeowner's Policy. In this regard, State Farm asserts that:

> FBS completely overlooks well-accepted law that, under a mortgage clause, the mortgagee and the insurer have a separate contract that is independent of the contract between the insured mortgagor and the insurer. *See, U.S. v. Commercial Union Ins. Cos.*, 821 F.2d 164, 166 (2nd Cir.1987). Accordingly, FBS's duties, including the duty to notify State Farm of any change in occupancy, is a separate duty that FBS owed *irrespective of the contractual obligations of Rodriguez and Andrade.*

*See*, Def. Memorandum in Opp. to Pl. Motion for S.J., 2. This argument fails because it is fundamentally inconsistent with State Farm's acceptance of the contention that a change in occupancy prompting a duty to notify State Farm under the Mortgage Clause must be

preamble of the occupancy clause states "Unless otherwise provided in writing added hereto this company *shall not* be liable for loss occurring ..." (Standard Policy, lines 28–30) (emphasis added). As FBS contends, this language most clearly allows for writings which expand coverage, rather than that which restricts coverage.

the sort of "change in occupancy" that would preclude recovery by the Named Insured. Furthermore, as discussed above, because the Named Insured's claim is not subject to denial in this case, the Mortgage Clause's notification provision never comes into play.

## CONCLUSION

For the reasons explained above, State Farm's motion for Summary Judgment is denied and FBS's motion for Summary Judgment is granted. Pursuant to Local Rule 1.70, this case is referred to Magistrate Judge Joan B. Gottschall for a report and recommendation on damages.